THE O'MARA LAW FIRM, P.C.
DAVID C. O'MARA
NEVADA BAR NO. 8599
311 East Liberty St.
Reno, Nevada 89501
775-323-1321
775-323-4082 (fax)
david@omaralaw.net

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| EAST CAREER AND TECHNICAL ACADEMY STUDENTS FOR LIFE, FELIPE AVILA, an individual, and JANELLE RIVERA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT; EAST CAREER AND TECHNICAL ACADEMY; DR. JESUS JARA, individually and in his capacity ad Superintendent of Clark County School District; TRISH TAYLOR, Individually and her capacity as Principal of East Career and Technical Academy; KAREN STELLUTO, individually and in her capacity as Assistant Principal of East Career and Technical Academy; and VINCENT MEDINA, Individually and in his capacity as Assistant Principal of East Career and Technical Academy,<br><br>Defendants. | Case No.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR INJUNCTIVE RELIEF,**
**DECLARATORY JUDGMENT, DAMAGES AND OTHER RELIEF**

Plaintiffs, East Career And Technical Academy Students For Life, Felipe Avila and Janelle Rivera, hereby complain of the defendants, Clark County School District, East Career and Technical Academy, Dr. Jesus Jara individually and in his capacity as Superintendent of the Clark County School District, Trish Taylor, individually and in her capacity as Principal of East Career And Technical Academy, Karen Stelluto, individually and in her capacity as Assistant Principal of East

1

Career And Technical Academy (collectively, "Defendants"), and in support thereof states as follows:

1. This dispute arises from discrimination and censorship by Defendants against a campus non-curricular, pro-life student club, East Career And Technical Academy's Students For Life club ("SFLC" or "the Club"), and its leaders, because of Defendants' antipathy to the Club's pro-life message. That discrimination and censorship infringed upon Plaintiffs' rights under the U.S. Const., Amendment I ("First Amendment"), under the Nevada Const., Article I, Sec. 9 ("Sec. 9"), and the Equal Access Act. That pervasive discrimination and censorship took numerous forms, as detailed herein, and was intended to, and successfully, suppressed the pro-life message of the SFLC.

## JURISDICTION AND VENUE

2. This action arises under the First Amendment of the United States Constitution, 42 U.S.C. § 1983 and 20 U.S.C. § 4071, *et seq*. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3. This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343; the requested injunctive and declaratory relief under 28 U.S.C. §§2201-02; the requested damages under 28 U.S.C. § 1343; and costs and attorneys' fees under 42 U.S.C § 1988(b).

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b). A substantial part of the actions or omissions giving rise to this case occurred within the District and, upon information and belief, at least one Defendant resides in the District.

## PARTIES

5. SFLC is a non-curricular club at East Career Technical Academy ("ECTA"). The Club was founded in 2019. It seeks to educate and inspire ECTA students to advocate for life and to oppose abortion. As part of its mission, it seeks to educate students about options to abortion, including the resources available to students who might become pregnant offered by pregnancy resource centers such as First Choice Pregnancy Services.

6. Plaintiff, Felipe Avila ("Avila") founded SFLC at ECTA in September, 2019, and approved by ECTA in October, 2019. He served as its President and, most recently, during the 2021-

2

2022 school year, as its Vice-President. Avila graduated from ECTA in May, 2022, but only after being subjected to years of censorship, and other misconduct by Defendants because of the Club's and his pro-life viewpoint.

7. Plaintiff, Janelle Rivera ("Rivera"), served as President of SFLC during the 2021-2022 school year and will continue her involvement with the Club during the 2022-2023 school year as SFLC's Vice-President. She has also been subjected to years of censorship by Defendants because of the Club's and her pro-life-viewpoint.

8. CCSD is a school district, organized and existing under the Constitution and Laws of the State of Nevada, for public elementary and secondary school purposes. CCSD administers over 300 schools in Clark County, Nevada, including Defendant, East Career and Technical Academy ("ECTA"). CCSD has a prior history of violating the statutory and constitutional rights of students with a pro-life viewpoint. In 2015, it refused to approve an application to start a pro-life club at another district secondary school, West Career Technical Academy. See *Angelique Clark v. Clark County School District, et al.*, United States District Court, District of Nevada, Case No. 2:15-cv-01549-JCM-PAL. That matter was subsequently dismissed, pursuant to stipulation, based on a settlement reached by the parties, pursuant to which CCSD agreed to approve the pro-life club, to treat the pro-life club the same as other non-curriculum clubs, and to pay fees to the plaintiff's attorneys.

9. East Career and Technical Academy ("ECTA") is a public secondary school which receives federal financial assistance. It has opened a limited open forum by allowing non-curriculum related student groups to meet on school premises during non-instructional time, including, among many others, the Feminist Club, the Gender and Sexuality Alliance, the Bible Club, the Amine Club, the Chess Club, the Black Student Union Club, the Asian Student Union Club, Cheer Club and Choir Club.

10. Dr. Jesus Jara ("Dr. Jara") is the Superintendent of CCSD. He is sued in his individual capacity and in his capacity as the Superintendent of the Clark County School District. Dr. Jara was the Superintendent of CCSD throughout the time of the misconduct alleged herein.

11. Trish Taylor ("Taylor") is the Principal of ECTA. She is sued in her individual capacity and in her capacity as Principal of ECTA. Taylor was the Principal of ECTA throughout the time of the misconduct alleged herein.

12. Karen Stelluto ("Stelluto") is an Assistant Principal of ECTA. She is sued in her individual capacity and her capacity as an Assistant Principal of ECTA. Stelluto was an Assistant Principal at ECTA throughout the time of the misconduct alleged herein occurred.

13. Vincent Medina ("Medina") was an Assistant Principal of ECTA throughout the 2019-2020 and 2020-2021 school years. He is sued in his individual capacity and his capacity as an Assistant Principal of ECTA.

## FACTUAL ALLEGATIONS

### Defendants' Discrimination Against SFLC And Censorship Of Its Message

14. As discussed in greater detail *infra*, Defendants pursued a variety of strategies to suppress the SFLC's pro-life message. Defendants made no effort to disguise its antipathy toward SFLC's pro-life message. In fact, during the 2021-2022 school year, posted on the "official" bulletin board in a health class classroom at ECTA, was a poster articulating ECTA's pro-abortion viewpoint, "No uterus, no opinion."

15. While promoting a pro-abortion message, Defendants discriminated against the SFLC in numerous different ways because of its pro-life viewpoint, including SFLC's ability to post "flyers" at ECTA.

16. For example, during the 2019-2020 school year, Medina refused to allow SFLC to post flyers on the basis that they "promoted" outside organizations because the flyers reflected information regarding the services provided by a pregnancy resource center and addressed adoption as an option for unexpected pregnancies, with the name and number of an adoption agency. During the 2021-2022 school year, SFLC was again denied permission to post flyers relating to the services available at a pregnancy resource center on the basis that they promoted an outside organization.

17. Defendants, however, permitted other clubs and student organizations to reference outside organizations in their flyers. For example, during the 2021-2022 school year, ECTA

4

approved flyers that "promoted" outside organizations included a DECA flyer that promoted an outside women's shelter (Shade Tree). That poster stated, "The Shade Tree Organization provides safe shelter to homeless and abused women and children in crisis." A Robotics Club poster promoting a fundraiser at Popeye's included a blown up picture of a chicken sandwich and the words, "Support the Robotics Team and buy a Popeye's chicken sandwich."

18.     At the beginning of the 2021-2022 school year, Stelluto denied SFLC permission to post flyers announcing the time, date and location of its first meeting of the year. SFLC was denied permission because the flyer included a picture depicting young people holding signs with pro-life messages. The stated reason for the denial was that the message printed on one of the signs ("I reject abortion") was "too controversial."

19.     In April, 2022, for the first time, Stelluto also rejected a SFLC flyer on the basis that "only the date and time of the club meeting" are permitted on club flyers.

20.     But Defendants approved flyers for other clubs that promoted their messages using words and images and which were not limited to the date and time of the club meeting. For example, the Black Student Union Club ("BSUC") was permitted to post a flyer stating in part, "Black Student Union is a safe space in which in students can discuss topics of race and other areas of social justice." In other flyers posted by the BSUC promoting its Black History Month Festival, that club was permitted to include a Malcom X quote, "A man who stands for nothing, will fall for anything." In another BSUC flyer, BSUC was permitted to promote "Power To The People Day", and to encourage students, "Go Back To The Basics And Showcase Your Best Black And Brown Clothing." BSUC was also permitted to put up a poster stating, "For The Culture," with that text surrounded by pictures of famous people of color.

21.     Defendants also discriminated against SFLC with respect to its ability to publish in the ECTA school newspaper. During the 2019-2020 school year, during the COVID19 pandemic, SFLC was denied the right to publish pictures of its flyers in the East Tech Times regarding health code violations and other issues found at Planned Parenthood. Because of the pandemic, the East Tech Times was the only means of outreach to other students available to the Club. The stated

reason given for the refusal was that pictures of flyers were not permitted and that all that was permitted to be published in the East Tech Times were text only "blurbs." During the 2021-2022 school year, SFLC again requested to include in the East Tech Times pictures of flyers regarding health code and other issues found at Planned Parenthood clinics, but Taylor and Stelluto again refused to respond to the request, *de facto* denying it. Other clubs, including the Chess Club, Cheer Club, Choir Club, FCCLA and HOSA were permitted to include pictures of their clubs' flyers in the East Tech Times.[1]

22.  During the 2021-2022 school year, SFLC also requested permission to allow it to erect a banner in the "catwalk" area of the school cafeteria, as other student organizations have been permitted to do.  The banner said, "Students for Life. The Future is Anti-Abortion".  Text LIFE to 53445."  Avila's request to post the banner was initially denied on the basis that the banner was "too professional" and had to be handmade. Later, CCSD's counsel asserted it was rejected because "student organizations are prohibited from hanging any banners in the school cafeteria unless they benefit all students." (Exhibit B).  Subsequently, despite numerous requests, Taylor and Stelluto refused to return the banner to SFLC.  although individual students and other student organizations have been permitted to do so.

23.  In addition, to the many other forms of discrimination and censorship to which Defendants subjected Plaintiffs, on February 7, 2022, Taylor hosted a summit for ECTA club leaders, which included the leaders of all or most of ECTA's clubs.  Avila learned of the meeting from the leader of another club. The meeting participants included the leader of the non-curricular Asian Student Union, who advised other members of the club she was attending a "school-wide meeting." Avila was advised by a person who attending the meeting that the leaders of the BSUC and Bible Club were also present at the meeting.  Taylor advised neither Avila nor Rivera of the

---

[1] In response to a letter sent by Plaintiffs' counsel complaining of the discriminatory treatment of SFLC (see Exhibit A), CCSD's counsel incorrectly asserted, "SFLC has never requested that it be permitted to include any announcements or other information in the East Tech Times." (See Exhibit B).

1  meeting, nor invited either of them, nor any member of the SFLC, to the meeting.  CCSD's counsel
2  claimed that only the leaders of ECTA-sponsored organizations were invited to the meeting, and that
3  the meeting was not open to any ECTA student-sponsored organizations, but the Asian Student
4  Union, the BSUC and the Bible Club (presumably) are not ECTA- sponsored clubs.

5      24.    Further, according to CCSD's counsel, the result of the meeting was the creation of
6  an interclub counsel that would meet monthly to discuss student issues and concerns, that would be
7  open to "all – Clark County School District – and ECTA sponsored organizations and all other
8  student organizations – including SFLC – will be invited to attend.  The first meeting is scheduled to
9  occur later this month."  SFLC did not receive an invitation to any such meeting.

10     25.    Consistent with Defendants' demonstrated prejudice against SFLC and its pro-life
11 message, Defendants failed, contrary to the requirements of Nev. Rev. Stat. 388.132, *et seq.*, to
12 ensure Avila with a safe and respectful learning environment.  Defendants failed to effectively
13 address repeated cyber-bullying attacks on Avila which expressly attacked him based on his
14 leadership roles in SFLC and his pro-life beliefs.

15     26.    During the 2020-2021 school year, Avila repeatedly reported the bullying to which he
16 was subject.  Although cyberbullying directed against Avila on the "ECTA confessions" Instagram
17 site in September, 2020, apparently resulted in minor discipline against certain students, additional
18 bullying in November, 2020 resulted in no discipline against any students.  The second round of
19 bullying went unpunished apparently because no one confessed to it.

20     27.    Avila continued to be subject to bullying because of his pro-life views during the
21 2021-2022 school year, but Defendants again refused to act. On September 2, 2021, other students
22 engaged in a barrage of Instagram posts directed to Avila that included rants against Avila's pro-life
23 position peppered with threats and intimidation. That cyberbullying included the following
24 comments among others: "first of all, cut your dick off if you are such a pro-lifer" - "i hope you rot
25 in hell and get your dick cut off"; "my name is felipe and I'm gay"; "anyways you gay my guy the
26 closet is open" - "@realfelipeavila where you at" -"he sucking on some penis rn"; we know your
27 [sic] active felipe - "felipe why the fuck are you reporting my friend account" - "loser" - "your mom
28

7

should have aborted you"; "can't take the heat" - "you thought this over" - "ha"; "he fs crying gagging and throwing up" - "LMAOO"; "You're are also a fucken [sic] boy stupid bitch wants to be oppressed so bad" - "Cut your dick off if you care so much"; "going to get my grind on today" - "i'm gonna get an abortion just for you felipe" - "felipe crying since I'm writing about abortion". Another "commenter" posted pictures of Mr. Avila and stated, "AYO on my mama fuck this nigga - Lame ass foo." See https://drive.google.com/drive/folders/1KkVJ47-_Aq0PgUNcP87hwDv8r-PtzDQB?usp=sharing

28. Avila, through his counsel, supplied copies of the actual posts to Jara and Taylor, as well as information identifying the bullying students, but Defendants took no action and instead found the bullying unsubstantiated. (See Exhibit A).

29. On September 9, 2021, Avila was the subject of an explicit cyberbullying threat while at school. Based on information from an ECTA student who saw Avila going up the stairs at ECTA, a non-ECTA student texted him, "I saw you going up the stairs at ECTA you're not safe." Avila's report of that bullying incident was found substantiated but with no discipline recommended, apparently because the threat came from a non-ECTA student. That response by Defendants, however, failed entirely to address that an ECTA student was stalking Avila and reporting his whereabouts to another student at a different school so that she could threaten him.

**Defendants' Policies Regarding Club Flyers, Posters and Banners**

30. CCSD's policies (Policy R-5132) state, in relevant part, "Noncurriculum-related student groups and individual members of those student groups may distribute materials in conformance with District Regulation 1110." https://ccsd.net/district/policies-regulations/pdf/5132_R.pdf

31. There are two versions of CCSD Policy 1110,[2] one version of CCSD Policy 1110 is entitled, "Distribution Of Materials By And Through Students." The provisions of that policy

---

[2] The CCSD Policy 1110 entitled "DISTRIBUTION OF MATERIALS THROUGH STUDENTS" provides:

8

provide, in relevant part: "Unless the principal determines that the material [proposed for school-wide distribution by students] falls within one of the prohibited categories set forth in Section III, the material will be approved for distribution. The distribution shall not be restricted or denied solely because of religious, political, or philosophical content of the material." CCSD Policy 1100(II)(a)(2). https://ccsd.net/district/policies-regulations/pdf/1110_R.pdf

32. Section III of that same policy prohibits the distribution of the following materials:

III. UNACCEPTABLE WRITTEN MATERIALS

The following will be considered unacceptable written material for general distribution in and upon the facilities of the Clark County School District:

1. Material that is reasonably anticipated to substantially interfere with the work of the school or impinge upon the rights of other students.
2. Material that promotes hostility, disorder, violence, or the commission of a crime.
3. Material designed for commercial purposes.
4. Material that is libelous.
5. Material that is profane, lewd, indecent, or offensive as defined by prevailing community standards throughout the district.
6. Material that would be subject to the provisions of NRS 389.065 if distributed by district employees.  CSD Policy 1100(III). https://ccsd.net/district/policies-regulations/pdf/1110_R.pdf

33. None of the materials submitted by SFLC for Defendants' approval violate any of those criteria and no one has claimed to Plaintiffs that they do.

---

I. No individual or group outside the schools has a right to distribute materials through students for private gain. Such distribution shall be limited to those materials that will directly benefit the educational program of a school or of the Clark County School District.

II. The Deputy Superintendent of Instruction shall provide for the review of materials proposed by outside sources for distribution through students. Any approval thereof shall not constitute an endorsement of the outside individual or group or of the cause served by the distribution of materials. https://ccsd.net/district/policies-regulations/pdf/1110_P.pdf

34.     However, according to CCSD's counsel's March 24, 2022 letter (Exhibit B), different rules apply to the materials submitted by SFLC.  CCSD's counsel asserted that ECTA student organizations are permitted to post one approved flyer per meeting or event, containing the time, place and location of the event and who is invited to attend.  Student organizations are also allowed to post flyers about fundraisers they are hosting for outside organizations, but not advertisements or promotions for outside organizations or advertisements or promotions for fundraisers conducted at an outside organization.  CCSD's counsel's March 24, 2022 letter states with regard to the DECA Shade Tree flyer discussed *supra* at para. 17, "The DECA club flyer referenced in your letter was used to inform ECTA students about a fundraiser that DECA was conducting to benefit the Shade Tree, a Las Vegas community organization that supports women and children in times of crisis. They flyer was not an advertisement or promotion for the Shade Tree, nor was it an advertisement or promotion for a fundraiser organized by or conducted at the Shade Tree, nor was it an advertisement or promotion for a fundraiser organized by or conducted at The Shade Tree." (See Ex. B).  In other words, student organizations are also allowed to post flyers about fundraisers they are hosting for outside organizations, but not advertisements or promotions for outside organizations or advertisements or promotions for fundraisers conducted at an outside organization.

35.     Also according to CCSD's counsel's March 24, 2022 letter, "pursuant to the ECTA Student Handbook student organizations are prohibited from hanging any banners in the school cafeteria unless they benefit all students."  (See Exhibit B.)

36.     In response to CCSD's counsel's letter, SFLC resubmitted for approval a flyer similar to that previously rejected at the beginning of the school year for being "too controversial." The flyer indicated the time, date and location of the next upcoming SFLC meeting, as well as the fact that all were welcome.  The flyer included the same picture students holding signs with pro-life messages. Neither Taylor nor Stelluto responded to numerous requests to approve that poster.

37.     CCSD did not respond to a request to provide clarification and copies of the written guidelines governing the permissible content of student organization flyers and banners.  (See Exhibit C).

38. On April 21, 2022, Avila sent a written request to Stelluto requesting a copy of "the written guidelines governing displays by student organizations on campus." In response, Stelluto provided Avila with page 11 of from a document ("Page 11"), believed to be a version of the ECTA Student Activities handbook. Stelluto represented to Avila that Page 11 set forth ECTA's rules governing approval of flyers, posters and banners. That document provides:

> **B.     Flyers, Posters, Banners**
>
>    1.   All flyers, posters, and banners (other than classroom student work) must be approved (with an approval stamp) through the Student Activities Office before they are posted. As every sign must have the stamp, an original copy should be made and stamped for approval prior to copies being made.
>
>    2.   All signs must be dated in the bottom right corner. Signs can be posted for a maximum of 2 weeks. All materials posted must be taken down on the last day of the activity. This includes materials used to hang the sign.
>
>    3.   Masking tape should be used to hang the signs - no clear tape, duct tape, or staples.
>
>    4.   Items may be posted on walls or empty/designated bulletin boards. They are not to be posted on glass windows or doors. No banners will be hung in the cafeteria unless the message benefits all students.
>
>    5.   No signs advertising for any outside agency that is not of an educational nature will be approved.
>
>    6.   Items not conforming to any of the above requirements will be removed immediately. (See Exhibit D)

39. Except for a requirement that they be dated in the bottom right corner and a prohibition against "advertising for any outside agency that is not of an educational nature," Page 11 sets forth no content guidelines for approval of student posters or flyers, but requires that banners reflect a message a that "benefits all students."

40. However, the current (as of 9/13/2022) on-line version of the ECTA Student Activities Handbook, which indicates it is for the 2021-2022 school year, provides as follows with respect to flyers, banners and posters for all clubs:

> Flyers, Posters, Banners
>
>    1.   All flyers, posters, and banners (other than classroom student work) must be approved (with an approval stamp) through the Student Activities Office before they are posted. As every sign must have the stamp, an original copy should be made and stamped for approval prior to copies being made.

2. All signs must be dated in the bottom right corner. Signs can be posted for a maximum of 2 weeks. All materials posted must be taken down on the last day of the activity. This includes materials used to hang the sign.

3. The purpose of all posted signs/flyers/posters/banners is to advertise a club's meeting date/time/location, as well as to detail who is invited to attend. Any signs/flyers/posters/banners which serve to promote a club's agenda or to persuade students viewpoints will not be approved. Signs/flyers/posters/banners to promote fundraising efforts or charitable donations will be allowed if that is the sole intended purpose of the sign/flyer/poster/banner.

4. Masking tape should be used to hang the signs – no clear tape, duct tape, or staples.

5. Approved items may be posted on walls or empty/designated bulletin boards. They are not to be posted on glass windows or doors. No banners will be hung in the cafeteria unless the message benefits all students.

6. No signs advertising for any outside agency that is not of an educational nature will be approved.

7. Items not conforming to any of the above requirements will be removed immediately.
https://drive.google.com/file/d/1LwVu9wgsu1kdEkPbKs4Fz5Hr-6_yOpNd/view

41. CCSD Policy 1110 (""Distribution Of Materials By And Through Students") further requires the principal to review materials submitted for distribution on a school wide basis, to respond within three days of the request and, if the request is denied, to specify the reasons for the denial in writing. (District Regulation 1110 II.A.3).

42. SFLC did not receive from Taylor, Stelluto, or anyone else at ECTA, a written statement denying distribution of materials submitted by SFLC for distribution on a school wide basis or a statement of the reasons for denials. Instead, ECTA either ignored SFLC's requests for distribution, or delivered verbal decisions denying SFLC's requests after regularly calling Avila out of class to receive the verbal denial from Taylor, Stelluto, Medina, or one of the other ECTA assistant principals, often with no explanation for the denial.

43. Defendants have purported to justify their discrimination against SFLC and its message based upon the foregoing conflicting policies.

44. All of the acts herein alleged of the Defendants, their officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done

under the color of state law, including the statutes, regulations, customs, policies, and usages of the State of Nevada.

45. By enacting and enforcing policies that withhold from Plaintiffs the status and benefits accorded other recognized student organizations, Defendants have engaged in discrimination against Plaintiffs based on the content and viewpoint of their speech and sent a message of exclusion and disfavor of Plaintiffs and their message, resulting in a chilling impact on Plaintiffs' efforts at recruitment, association, and dissemination of their message.

46. Unless and until enforcement of the Defendants' conflicting policies are enjoined, and Defendants are prohibited from purporting to rely upon policies which purport to allow them discretion to reject messages communicating viewpoints which they disfavor, Plaintiffs will suffer and continue to suffer irreparable harm to their federal constitutional rights to free association, freedom of speech, and equal access to the forum for club speech opened by Defendants.

47. The conduct of Defendants, Jara, Taylor, Stelluto, and Medina as alleged herein, violates clearly established statutory and constitutional rights of which a reasonable person would have known.

## CLAIMS FOR RELIEF

## COUNT I

**Defendants' Conduct Violates the Equal Access Act**

48. The allegations contained in paragraphs 1-47 are re-alleged and incorporated herein by reference.

49. The EAA prohibits those public secondary schools which receive federal funds and offer a "limited open forum" from denying any student equal access to that forum on the basis of the content of that student's speech. 20 U.S.C. §4071(a).

50. The EAA further states that "[a] public secondary school has a limited open forum whenever such school grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time." 20 U.S.C. §4071(b).

51. Defendants govern and administer ECTA, a public secondary school, receive federal funds, and their policies and rules governing clubs create a limited open forum.

52. As written and as applied, Defendants' policies, as set forth in CCSD Policies 1110 and R5132, CCSD's counsel's letter (Exhibit B), Page 11, the 2021-2022 ECTS Student Activities Handbook, as well as Defendants' purported unwritten ad hoc policies, create a conflicting morass of rules and restrictions which purport to vest Defendants with the power to selectively ignore or embrace the conflicting standards they articulate as a basis for discriminating against the message of SFLC and its individual members based upon its content, and to favor the message of other noncurriculum clubs.

53. Purportedly in accordance with those policies, Defendants have allowed other noncurricular clubs, like the BSUC, Chess Club, Cheer Club and Choir Club, and their members, to articulate their messages without subjecting them to the censorship to which Defendants have subjected SFLC.

54. In addition, Defendants discriminated against SFLC and its members by denying them any access to the summit for ECTA club leaders, by simply excluding them while including the leaders of all or most of ECTA's clubs, including other noncurricular clubs.

55. The conduct of Defendants, Taylor, Stelluto, and Medina as alleged herein, violates clearly established statutory and constitutional rights of which a reasonable person would have known.

WHEREFORE, Plaintiffs respectfully request that the Court grant the relief requested set forth in the prayer for relief.

# COUNT II

**Defendants' Policies, on Their Face And As Applied,
Violate the Rights of Freedom of Speech and of Association
<u>Guaranteed Under the First Amendment of the United States Constitution</u>**

56. The allegations contained in paragraphs 1 through 55 are re-alleged and incorporated herein by reference.

57. The First Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, recognizes and protects the right of freedom of speech and of association.

58. This includes the rights of students to express their opinions, even on controversial subjects, at school. Tinker v. Des Moines Indep. Sch. Dist., 393 U.S. 503, 512-513 (1969).

59. Governmental efforts to regulate speech based on the "specific motivating ideology or the opinion or perspective of the speaker" is a "blatant" and "egregious" form of impermissible speech restriction. Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819, 828-829 (1995).

60. Defendants' conflicting policies, as written and as applied, impose content-based, discriminatory restrictions upon Plaintiffs' speech, which are not narrowly tailored to a compelling governmental interest, and consequently violate Plaintiffs' First Amendment rights to freedom of speech and freedom of association.

61. Defendants have no compelling reason that would justify the burden imposed upon Plaintiffs' rights of freedom of speech and of association.

WHEREFORE, Plaintiff respectfully requests that the Court grant the relief set forth hereinafter in the prayer for relief.

## COUNT III

**Defendants' Policies, on Their Face And As Applied, Violate the Rights of Freedom of Speech and Association Guaranteed Under the Nevada Constitution**

62. The allegations contained in paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

63. The Constitution of the State of Nevada, Article I, Sec. 9, recognizes and protects the right of freedom of speech.

64. The Constitution of the State of Nevada, Article I, Sec. 10, recognizes and protects the right of freedom of association.

65. Defendants' conflicting policies, as written and as applied, impose content-based, discriminatory restrictions upon Plaintiffs' speech, which are not narrowly tailored to a compelling governmental interest, and which violate Plaintiffs' rights under the Nevada Constitution to freedom of speech and to association.

66. Defendants have no compelling reason that would justify the burden imposed upon Plaintiffs' rights of freedom of speech and of association.

WHEREFORE, Plaintiff respectfully requests that the Court grant the relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that judgment be entered in their favor and that relief be granted against Defendants as follows:

a. That this Court assume jurisdiction over this action and set it for hearing;

b. That this Court declare Defendants' policies concerning clubs violate the federal Equal Access Act both on their face and as applied because they violate the rights of Plaintiffs and others not before the court to the freedoms of equal access to the limited open forum of secondary school clubs on the basis of the content and viewpoint of their speech, which are guaranteed to Plaintiffs and others under the Equal Access Act;

  c. That this Court declare Defendants' policies concerning clubs unconstitutional on their face and as applied because they violate the rights of Plaintiffs and others not before the court the rights to freedom of speech and association, which are guaranteed to Plaintiffs and others under the First Amendment of the United States Constitution;

  d. That this Court enter a preliminary injunction, later to be made permanent, enjoining all Defendants from enforcing CCSD's policies concerning clubs – absent injunctive and declaratory relief, Plaintiffs and all members of SFLC will continue to be irreparably harmed;

  e. That this Court award Plaintiffs compensatory and punitive damages;

  f. That this Court award Plaintiffs their costs of litigation, including reasonable attorneys' fees; and

  g. That this Court grant such other and further relief as it deems just and proper.

  h. Plaintiff demands a jury for all issues so triable.

DATED: September 29, 2022   THE O'MARA LAW FIRM, P.C.

               /s/ David C. O'Mara
              DAVID C. O'MARA, ESQ
              311 East Liberty St.
              Reno, Nevada 89501
              775-323-1321
              775-323-4082 (fax)

              Joan M. Mannix*
              Thomas More Society  - Special Counsel
              135 South LaSalle Street, Suite 2200
              Chicago, IL 60602
              (312) 685-4552
              jmannnix@joanmannixltd.com

              *pro hac vice application forthcoming

              *Counsel for Plaintiffs*

...

INDEX OF EXHIBITS

x

| Exh No. | Description | Pages |
|---|---|---|
| A | Letter dated February 16, 2022 | 7 |
| B | Response letter dated March 24, 2022 | 4 |
| C | Letter dated April 28, 2022 | 4 |
| D | Section from ECTA Student Activities handbook page 11 | 1 |