**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Jackie V. Nichols, Esq.
Nevada Bar No. 14246
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
jnichols@maclaw.com
    Attorneys for Defendants Clark County School
    District, Dr. Jesus Jara, Trish Taylor, Vincent
    Medina, and Karen Stelluto

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EAST CAREER AND TECHNICAL ACADEMY STUDENTS FOR LIFE, FELIPE AVILA, an individual, and JANELLE RIVERA, an individual,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CLARK COUNTY SCHOOL DISTRICT; EAST CAREER AND TECHNICAL ACADEMY; DR. JESUS JARA, individually and in his capacity as Superintendent of Clark County School District; TRISH TAYLOR, Individually and her capacity as Principal of East Career and Technical Academy; KAREN STELLUTO, individually and in her capacity as Assistant Principal of East Career and Technical Academy; and VINCENT MEDINA, Individually and in his capacity as Assistant Principal of East Career and Technical Academy,<br><br>                    Defendants. | Case Number:<br>2:22-cv-01647-RFB-BNW<br><br><br>**DEFENDANTS CLARK COUNTY SCHOOL DISTRICT, DR. JESUS JARA, TRISH TAYLOR, VINCENT MEDINA AND KAREN STELLUTO'S MOTION FOR PARTIAL DISMISSAL** |

Defendants Clark County School District ("CCSD"), Dr. Jesus Jara ("Dr. Jara"), Trish Taylor ("Taylor"), Vincent Medina ("Medina"), and Karen Stelluto ("Stelluto") (hereinafter collectively referred to "CCSD Defendants"), by and through their attorneys of record, the law firm of Marquis Aurbach, hereby submit their Motion for Partial Dismissal.

. . .

. . .

MAC:01444-017 4909697_2 11/22/2022 7:47 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   This Motion is made and based upon all papers, pleadings, and records on file herein,

2   the attached Memorandum of Points and Authorities, and any oral argument allowed at a

3   hearing on this matter.

**MEMORANDUM OF POINTS & AUTHORITIES**

4

5   **I.    INTRODUCTION**

6          Plaintiffs assert that the CCSD Defendants discriminated against them, including the

7   East Career and Technical Academy's Students for Life Club ("SFLC or the Club"), by

8   censoring their speech and suppressing their pro-life message. As a result, Plaintiffs bring

9   three causes of actions against the CCSD Defendants: (1) Violation of the Equal Access Act;

10  (2) Violation of the First Amendment (facial and as-applied challenge); and (3) Violation of

11  Nevada Constitution.

12         First, the CCSD Defendants seek to dismiss various parties from the instant lawsuit.

13  East Career and Technical Academy (ECTA) is not a proper defendant as it is CCSD that has

14  the power to sue and be sued under Nevada law. NRS 386.010. Because CCSD is a party to

15  the instant action, ECTA must be dismissed. The Complaint also asserts claims against the

16  individual defendants in their official capacities. It is well established that claims brought

17  against government officials in their official capacities are essentially claims against the

18  government agency. Thus, in instances where a government agency is a named party, any

19  claims against individuals in their official capacities are duplicative. As such, the Court

20  should dismiss the individual defendants in their official capacities. Additionally, this Court

21  should enter an order dismissing Dr. Jara in his individual capacity because there are no factual

22  allegations that demonstrate he participated in any unlawful conduct.

23         Second, the Court must clarify the parameters of the particular claims. In that respect,

24  Plaintiff Avila is barred from seeking prospective relief because he is no longer a student at

25  ECTA. Similarly, the Equal Access Act claim must be limited to only CCSD and cannot be

26  asserted against the individual defendants in their individual capacity. Finally, Plaintiffs

27  cannot maintain a claim under the Nevada Constitution because there is no private right of

28  action.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:01444-017 4909697_2 11/22/2022 7:47 AM

In sum, the Court should enter an order granting the CCSD Defendants' motion for partial dismissal to the effect of: (1) dismissing ECTA as a party; (2) dismissing the individual defendants in their official capacity; (3) dismissing Dr. Jara in his individual capacity; (3) determining that Plaintiff Avila's claims for prospective relief are moot; (4) dismissing the individual defendants from the Equal Access Act claim; and (5) dismissing Plaintiffs' claim under the Nevada Constitution entirely.

## II.   STATEMENT OF FACTS[1]

ECTA is a public secondary magnate school operated by CCSD. ECF No. 1, at ¶¶ 8-9. Dr. Jara is the Superintendent of CCSD. *Id.* at ¶ 10. Defendant Trish Taylor is the Principal of ECTA. *Id.* at ¶ 11. Defendant Karen Stelluto recently retired from her position as an Assistant Principal at ECTA. *Id.* at ¶ 12. From 2019-2021, Defendant Vincent Medina served as Assistant Principal of ECTA. *Id.* at ¶ 13. He is no longer employed by CCSD.

SFLC is a non-curricular club at ECTA founded in 2019. *Id.* ¶ 5. Part of its mission is to educate students about options to abortion. *Id.* Plaintiff Avila founded SFLC and served as its Vice-President during the 2021-2022 school year. *Id.* at ¶ 6. Plaintiff Avila graduated from ECTA in May 2022. *Id.* Plaintiff Rivera served as SFLC's president during 2021-2022 school year and continues her involvement with the Club as its Vice-President during the 2022-2023 school year. *Id.* at ¶ 7.

## III.   LEGAL ARGUMENT

### A.   LEGAL STANDARD.

A claim for relief set forth in any pleading may be dismissed as a matter of law under NRCP 12(b)(5) for failure to state a claim upon which relief can be granted. *See* NRCP 12(b)(5). While dismissal requires the Court to construe the pleadings liberally and draw every fair inference in favor of the non-moving party, if it appears that the pleading party can prove no set of facts which would entitle it to relief dismissal should be granted. *Brown v.*

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

---

[1] The facts recited herein are limited to the facts necessary for purposes of the instant motion.

MAC:01444-017 4909697_2 11/22/2022 7:47 AM

*Kellar,* 97 Nev. 582, 636 P.2d 874 (1981); *see also Bergmann v. Boyce,* 109 Nev. 670, 856 P.2d 560 (1993).

The test for determining whether the allegations are sufficient to assert a claim for relief is whether the allegations give fair notice of the nature and basis of a legally sufficient claim and the relief requested. *Breliant v. Preferred Equities Corp.,* 109 Nev. 842, 846, 858 P.2d 1258 (1993). In reviewing a motion to dismiss, the court shall determine whether or not the challenged pleading sets forth sufficient allegations to make out the elements for a claim for relief. *Edgar v. Wagner,* 101 Nev. 226, 699 P.2d 110 (1985). If all of a party's allegations are accepted as true and still do not justify any relief, the trial court should properly dismiss the claims. *Blackjack Bonding v. City of Las Vegas Municipal Court,* 116 Nev. 1213, 1214, 14 P.3d 1275, 1278 (2000).

**B.    EAST CAREER TECHNICAL ACADEMY IS NOT A PROPER DEFENDANT AND MUST BE DISMISSED FROM THE LAWSUIT.**

Plaintiffs' claims against the East Career Technical Academy (ECTA) should be dismissed as ECTA is not a proper party to this action. Both ECTA and CCSD are named defendants; ECTA is part of CCSD. CCSD is a political subdivision of the State of Nevada with the "power to sue and may be sued." NRS 386.010. ECTA is not an entity separate from CCSD, and has no individual capacity to sue or be sued. *Id.; see also, Cottle v. Gillespie,* 2011 WL 2651685, at *1 (D. Nev. July 6, 2011) ("Washoe County District Attorney's Office was simply a department of the county and not a separate political subdivision subject to suit"); *Bauchman v. West High School,* 900 F. Supp. 254, 263-64 (D. Utah 1995) ("[i]ndividual schools are merely inseparable parts of the school districts"). Accordingly, ECTA should be dismissed from this action.

**C.    THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES MUST BE DISMISSED.**

According to well established federal law, "a suit against a governmental official in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. Los Angeles,* 946 F.2d 630, 645 (9th Cir. 1991). The real party in such suits is the entity, and it is the entity that will be responsible for any damages. *Ward v. City of Sparks,* 2011 WL

587153 at *4 (D. Nev. Jan. 12, 2011). Indeed, the United States Supreme Court has held that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985). Where both the public entity and a municipal officer are named in a lawsuit, a court may dismiss the individual named in his official capacity as a redundant defendant. *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff's Dep't*, 533 F.3d 780, 799 (9th Cir. 1986).

Thus, Plaintiffs' official capacity claims against the individual defendants are duplicative of the claims against CCSD because a suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself. Accordingly, the individual defendants, in their official capacities, must be dismissed.

**D.     DR. JARA MUST BE DISMISSED FROM THE LAWSUIT.**

As a general rule, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . ." *Lynch v. Ramsey*, 2010 WL 4400027 (E.D. Pa. Nov. 4, 2010). Under §1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). A supervisor may only be held liable if there exists either: (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violation, or knew of the violation and failed to act to prevent them. There is no respondeat superior liability under Section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here, there are no allegations of Dr. Jara's personal involvement in the alleged unlawful conduct asserted by Plaintiffs. Nor are there any facts pled to allow this Court to infer a sufficient casual connection between Dr. Jara and any constitutional violation. *See* ECF No. 1, *generally*. Accordingly, this Court must dismiss Dr. Jara from the instant lawsuit entirely.

MAC:01444-017 4909697_2 11/22/2022 7:47 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**E.   PLAINTIFF AVILA CANNOT SEEK PROSPECTIVE RELIEF.**

"It is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy." *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000); *accord, e.g., Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (en banc) ("A student's graduation moots claims for declaratory and injunctive relief, but it does not moot claims for monetary damages.").

The Complaint asserts that Avila graduated from ECTA in May 2022.  ECF No. 1, ¶ 6. Because Avila graduated from CCSD, he is not able to seek the prospective relief, such as declaratory or injunctive relief, as sought by the Complaint.  *See* ECF No.1 at Prayer for Relief.

**F.   PLAINTIFFS' EQUAL ACCESS ACT CLAIM MUST BE LIMITED TO CCSD AND CANNOT APPLY TO INDIVIDUAL DEFENDANTS.**

The Equal Access Act, 20 U.S.C. §§ 4071–74, guarantees public secondary school students the right to participate voluntarily in extracurricular groups dedicated to religious, political, or philosophical expressive activity protected by the First Amendment when other student groups are given this right.  *Prince v. Jacoby*, 303 F.3d 1074, 1078 (9th Cir. 2002). The key provision of the Act provides:

> It shall be unlawful for **any public secondary school** which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071(a).  The plain language of the statute makes it unlawful for **a public secondary school** to take a particular action.  Nothing in the statutory language permits liability to be held against individual defendants.

Liability under similar statutes is instructive.  By way of example, an action under Title IX, which protects against discrimination under "any education program or activity receiving federal financial assistance" (20 U.S.C. 1681(a)), has been limited by federal courts to grant recipients.  Thus, "Title IX [cannot] be appropriately read as subjecting anyone other

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   than educational institutions to liability for violation of its terms." *Lillard v. Shelby County*

2   *Bd. Of Educ.*, 76 F.3d 716, 730 (6th Cir. 1996). *See also Smith v. Metropolitan School District*

3   *Perry Township*, 128 F.3d 1014, 1020 (7th Cir. 1997) ("Because neither ... the principal of

4   Southport High, nor ... the assistant principal of Southport, individually, is a grant recipient

5   under Title IX, Smith's Title IX claim against them cannot stand.).

6        Following the same reasoning applied to Title IX suits, this Court must limit Plaintiffs'

7   Equal Access Act claim to liability against CCSD and dismiss the individual defendants as to

8   this claim.

9   **G.   NO PRIVATE RIGHT OF ACTION EXISTS UNDER THE NEVADA
            CONSTITUTION.**

10

11       Plaintiffs attempt to pursue a claim for freedom of speech and association under the

     Nevada Constitution.   However, there is no private right of action under the Nevada
12
     Constitution for freedom of speech or association.   Plaintiffs bear the burden to show that a
13
     private right of action authorizing their claim exists. *Suter v. Artist M.*, 503 U.S. 347, 363-64
14
     (1992); *see Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 964 (2008). Plaintiffs cannot
15
     carry their burden. Article 1, Section 9 of the Nevada Constitution provides:
16
          Every citizen may freely speak, write and publish his sentiments on all subjects
17        being responsible for the abuse of that right; and no law shall be passed to
          restrain or abridge the liberty of speech or of the press. In all criminal
18        prosecutions and civil actions for libels, the truth may be given in evidence to
          the Jury; and if it shall appear to the Jury that the matter charged as libelous is
19        true and was published with good motives and for justifiable ends, the party
          shall be acquitted or exonerated.
20
     Unlike the federal legislature, by way of 42 U.S.C. § 1983, the Nevada legislature has never
21
     enacted legislation creating a private cause of action under Article I § 9 of the Nevada
22
     Constitution.   Constitutional interpretation turns on the "public understanding" of the
23
     provision's text in the period leading up to and including its adoption. *Pohlabel v. State*, 128
24
     Nev. 1, 9 (2012). When the language is unambiguous, "its text controls." *Id.*
25
         By way of example, Article XV, § 16(B) specifically allows for a private right of
26
     action. Further, the Nevada Supreme Court has not recognized a common law right of action
27
     under the Nevada Constitution's mandate of due process. Had the Nevada Legislature of the
28

MAC:01444-017 4909697_2 11/22/2022 7:47 AM

Citizens of the State of Nevada intended a private cause of action under Article I, § 9, they would have included that right within the article, as they did in Article XV, § 16(B). Indeed, Article IV, § 22 of the Nevada Constitution permits the Legislature to create causes of action "against the State as to all liabilities originating after the adoption of this Constitution." Nev. Const. Art. 4, § 22. By its own terms, then, the Constitution itself does not create a cause of action – it requires legislation. *Id.*

In that respect, the Legislature expressly denied creating a cause of action under the Nevada Constitution. In Nevada's system, "issues relating to serious financial, administrative and policy concerns should be resolved by the legislature" – not the courts. *Blanton v. N. Las Vegas Mun. Court*, 103 Nev. 623, 636 (1987); *see also State v. Second Judicial Dist. Court (Hearn)*, 134 Nev. 783, 786 (2018) (citing Nev. Const. art. 3, § 1 and recognizing that Nevada's government divides its power between three branches – legislative, executive and judicial). When, as here, "an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quotation marks omitted).

The Free Speech Clause looks to legislation to become enforceable by private citizens. As the framers of the Nevada Constitution intended, the Legislature has established a comprehensive statutory scheme for the enforcement of the Nevada Constitution. NRS 30.040 enables a plaintiff to obtain a declaration on a statute's constitutionality. *See Tam v. Colton*, 94 Nev. 453, 456 (1978). The Nevada Administrative Procedure Act, NRS chapter 233B, permits affected persons to challenge the constitutionality of regulations and agency adjudications. NRS 233B.110(1), 233B.135(3)(a). NRS 33.010 creates a right to enjoin unconstitutional government acts. *City of Sparks v. Sparks Mun. Court*, 129 Nev. 348, 357 (2013).

Constitutional rights can also be enforced through legislatively created writ proceedings. *See, e.g.*, NRS 34.724(1) (post-conviction writ of habeas corpus); *State ex rel. Brennan v. Bowman*, 88 Nev. 582, 584-85 (1972) (writ of mandamus). In fact, the Legislature

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:01444-017 4909697_2 11/22/2022 7:47 AM

has created a writ proceeding specifically for one type of constitutional claim – prior restraints of speech. NRS 34.185(1).

The Legislature has omitted a private right of action for damages from its comprehensive statutory scheme. Plaintiffs resort to asking this Court to imply a private right of action for damages to make up for the Legislature's omission, an invitation this Court must reject. It is not this Court's role to "fill in alleged legislative omissions based on conjecture as to what the legislature would or should have done." *Echeverria v. State*, 137 Nev. Adv. Op. 49, 495 P.3d 471, 476 (2021).

This Court implies a private right of action not explicit in the statutory text only if the plaintiff can show that the Legislature intended to confer that right. *Baldonado*, 124 Nev. at 958. If they cannot make that showing, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter." *Id.* at 959.

In 2021, the Nevada Legislature expressly rejected a private right of action under the Nevada Constitution. Senate Bill 236 (SB 236) was proposed by Senator Harris to create a private right of action under Nevada's Constitution. *See* Senate Bill 236 (Leg. Sess. 2021) (proposed) attached hereto as **Exhibit A**. Section 3 of the SB 236 sought to amend NRS Chapter 41 to expressly include:

> 1. Any peace office who subjects another person or causes another person to be subjected to the deprivation of any individual constitutional rights that create binding obligations on government actors is liable to the injured party for legal, equitable or other relief.

**Exhibit A**. Like 42 U.S.C. § 1983, this provision would have permitted Plaintiffs to seek damages under Nevada's Constitution. The Legislature, however, neglected to adopt this provision. *See* SB 286, As Enrolled (Leg. Sess. 2021) attached hereto as **Exhibit B**. The absence of an express provision establishing a right of action creates a presumption that there is no such right. *Baldonado*, 124 Nev. at 959 & n.11, 964. Accordingly, this Court cannot find that the Constitution nor that the Legislature intended to permit a cause of action for damages under Art. 1, § 9 of the Constitution. *See McKay v. Bd. of Cty. Comm'rs*, 103 Nev. 490, 492 n.2, 746 P.2d 124, 125 (1987) (holding that the failure to adopt proposed language

Page 9 of 11

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  in a bill is evidence of the Legislature's intent to the contrary).  Accordingly, this claim must

2  be dismissed.

3  **IV.**    **CONCLUSION**

4       Based on the foregoing, CCSD Defendants respectfully request the Court grant their

5  Motion for Partial Dismissal.

6       Dated this <u>22nd</u> day of November, 2022.

7

8                                              MARQUIS AURBACH

9

10                                             By:<u>/s/ Jackie V. Nichols</u>
                                                  Craig R. Anderson, Esq.
11                                                Nevada Bar No. 6882
                                                  Jackie V. Nichols, Esq.
12                                                Nevada Bar No. 14246
                                                  10001 Park Run Drive
13                                                Las Vegas, Nevada 89145
                                                  Attorneys for Defendants Clark County
14                                                School District, Dr. Jesus Jara, Trish
                                                  Taylor, Vincent Medina, and Karen Stelluto
15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:01444-017 4909697_2 11/22/2022 7:47 AM

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS CLARK COUNTY SCHOOL DISTRICT, DR. JESUS JARA, TRISH TAYLOR, VINCENT MEDINA AND KAREN STELLUTO'S MOTION FOR PARTIAL DISMISSAL** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 22nd day of November, 2022.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

N/A

/s/ Krista Busch
An employee of Marquis Aurbach

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Page 11 of 11

MAC:01444-017 4909697_2 11/22/2022 7:47 AM

# EXHIBIT A

**Senate Bill 236 (Leg. Sess. 2021) (proposed)**

**S.B. 236**

SENATE BILL NO. 236–SENATOR D. HARRIS

MARCH 15, 2021

———————

Referred to Committee on Judiciary

SUMMARY—Makes various changes relating to public safety.
(BDR 23-217)

FISCAL NOTE:  Effect on Local Government: May have Fiscal Impact.
Effect on the State: Yes.

CONTAINS UNFUNDED MANDATE (§§ 1, 17)
(NOT REQUESTED BY AFFECTED LOCAL GOVERNMENT)

~

EXPLANATION – Matter in *bolded italics* is new; matter between brackets [omitted material] is material to be omitted.

AN ACT relating to public safety; requiring law enforcement agencies to establish early warning systems to identify peace officers who display bias indicators or other problematic behavior; authorizing the Peace Officers' Standards and Training Commission to adopt regulations relating to such early warning systems; revising the qualifications for certification as a peace officer by the Commission; imposing liability on peace officers who subject another person or cause another person to be subjected to the deprivation of certain constitutional rights; establishing provisions relating to the recording, collection and review of information concerning traffic stops and other stops made by law enforcement officers; imposing certain duties on the Department of Public Safety and law enforcement agencies regarding the recording, collection and review of such information; authorizing the Department to adopt regulations relating to the recording, collection and review of such information; requiring the Legislative Commission to appoint a committee to conduct an interim study relating to the establishment of crisis response call centers; and providing other matters properly relating thereto.





– 2 –

**Legislative Counsel's Digest:**

1    Existing law sets forth provisions governing peace officers and establishes the
2  Peace Officers' Standards and Training Commission (hereinafter "POST"), which
3  generally provides for the training and education of peace officers. (Chapter 289 of
4  NRS) **Section 1** of this bill requires every law enforcement agency to establish an
5  early warning system for the purpose of identifying peace officers employed by the
6  law enforcement agency who display bias indicators or other problematic behavior.
7  **Section 1** requires that if a peace officer is identified by the early warning system
8  as displaying bias indicators or other problematic behavior, the law enforcement
9  agency that employs the peace officer is required to increase its supervision of the
10  peace officer and provide additional training and, if appropriate, counseling to the
11  peace officer. If a peace officer is repeatedly identified by the early warning system
12  as displaying bias indicators or other problematic behavior, the law enforcement
13  agency that employs the peace officer is required to consider the consequences that
14  should be imposed, including transferring the peace officer from any high-profile
15  assignments or subjecting the peace officer to any discipline. **Section 1** also
16  authorizes POST to adopt any regulations necessary to carry out the provisions
17  relating to such early warning systems.
18    Existing law generally requires a person upon whom some or all of the powers
19  of a peace officer are conferred to be certified by POST. (NRS 289.550) **Section 2**
20  of this bill provides that before such a person may be certified, the person is
21  required to have: (1) at a minimum, received an associate's degree; or (2)
22  completed at least 2 years of military service. **Section 2** also specifies that a person
23  does not need to satisfy such a requirement before he or she participates in any
24  training required as a condition of certification as a peace officer.
25    Existing law establishes provisions relating to the liability of and actions
26  against this State, its agencies and its political subdivisions. (NRS 41.0305-
27  41.0309) **Section 3** of this bill imposes liability on any peace officer who subjects
28  another person or causes another person to be subjected to the deprivation of any
29  individual constitutional rights that create binding obligations on government
30  actors. **Section 3** also provides that in an action brought as a result of a deprivation
31  of such constitutional rights, qualified immunity can only be used as a defense in
32  certain circumstances. **Section 3** additionally requires the employer of a peace
33  officer to indemnify the peace officer for any liability incurred by, and any
34  judgment or settlement entered against, the peace officer unless the actions of the
35  peace officer were malicious, wanton or willful.
36    Existing law establishes provisions relating to the rules of the roads in this
37  State, including rules pertaining to pedestrians. (Chapter 484B of NRS) **Sections 7-**
38  **21** of this bill establish provisions relating to the recording, collection and review of
39  information concerning traffic stops and other stops made by law enforcement
40  officers. **Section 17** of this bill requires the Department of Public Safety to develop
41  and implement, not later than January 1, 2022: (1) a standardized method to be used
42  by law enforcement officers to record certain information concerning any such
43  stop, including certain demographic information of the person who was stopped;
44  and (2) training and procedures to facilitate the collection of such information.
45  **Section 17** also requires: (1) law enforcement officers that make a traffic or other
46  stop to record such information beginning on January 1, 2022; and (2) law
47  enforcement agencies that retain such information to report such information for
48  each calendar year to the Department beginning not later than February 1, 2023.
49  **Section 17** additionally requires that any such information be used for statistical
50  purposes only and not contain any identifying information relating to a law
51  enforcement officer who performed a traffic stop or other stop or a person who was
52  stopped. **Section 17** provides that any information that could reveal the identity of
53  such a law enforcement officer or person is exempt from public disclosure.





– 3 –

54  **Section 18** of this bill authorizes the Department, to the extent that money is
55  available, to contract with a third party to review all public information reported by
56  law enforcement agencies concerning traffic stops and other stops and conduct a
57  statistical analysis of the data to identify patterns or practices of profiling. **Section**
58  **18** requires the Department to seek any available gifts, grants or donations to assist
59  in enabling the Department to contract with a third party to conduct such a
60  statistical analysis. **Section 18** also requires such a third party with whom the
61  Department contracts to submit, during the year in which a statistical analysis is
62  conducted, a report of the results of the analysis to the Governor, the Department
63  and the Chairs of the Senate and Assembly Standing Committees on Judiciary.
64  **Section 19** of this bill authorizes the Department, after reviewing the report, to
65  provide advice or technical assistance to any law enforcement agency mentioned in
66  the report and, if such advice or technical assistance is provided, requires the
67  Department to present to POST a summary of the advice or technical assistance
68  given.
69  **Section 20** of this bill requires the Department to record information collected
70  from law enforcement agencies concerning traffic stops and other stops in a central
71  repository created by the Department to track data electronically concerning such
72  stops on a statewide basis. However, **section 25** of this bill provides that, unless the
73  Department is able to create such a central repository and record such information
74  using existing resources, such a requirement only becomes effective on the date on
75  which federal funding is obtained for the recording, collection and review of
76  information concerning traffic stops and other stops made by law enforcement
77  officers.
78  **Section 21** of this bill authorizes the Department to adopt any regulations
79  necessary to carry out the provisions relating to the recording, collection and review
80  of information concerning traffic stops and other stops made by law enforcement
81  officers.
82  **Section 22** of this bill requires the Legislative Commission to appoint a
83  committee to conduct an interim study relating to the establishment of crisis
84  response call centers. **Section 22** requires that such a study include: (1) an
85  examination of certain proposals relating to responses to non-violent and non-
86  emergency situations; (2) a determination of how information should be provided to
87  the public regarding when to call an emergency number, a non-emergency number
88  or another help line; (3) the consideration of alternative models regarding responses
89  to crises that do not require armed law enforcement officers; and (4) a
90  determination of the feasibility of establishing a pilot program relating to crisis
91  response call centers. **Section 22** requires the interim committee to submit a report
92  of its findings and any recommendations for legislation to the Governor and the
93  Director of the Legislative Counsel Bureau for transmittal to the 82nd Session of
94  the Nevada Legislature.

---

THE PEOPLE OF THE STATE OF NEVADA, REPRESENTED IN
SENATE AND ASSEMBLY, DO ENACT AS FOLLOWS:

1   **Section 1.**   Chapter 289 of NRS is hereby amended by adding
2   thereto a new section to read as follows:
3   *1.   Each law enforcement agency shall establish an early*
4   *warning system for the purpose of identifying peace officers*
5   *employed by the law enforcement agency who:*
6   *(a)  Display bias indicators by, for example:*
7   *(1)  Having a large number of citizen complaints;*




– 4 –

1       (2) *Being part of a large number of incidents involving the*
2 *use of force;*
3       (3) *Making a large number of arrests for resisting an*
4 *officer;*
5       (4) *Having a large number of the arrests that he or she has*
6 *made result in no charges being filed because of issues such as*
7 *improper searches or detentions; or*
8       (5) *Having a negative attitude regarding programs that*
9 *enhance relations between law enforcement and the community.*
10    (b) *Display other problematic behavior by, for example:*
11       (1) *Having a large number of motor vehicle crashes;*
12       (2) *Abusing sick leave; or*
13       (3) *Showing any other behavioral signs that are indicative*
14 *of a decline in performance.*
15    2.  *If a peace officer is identified by the early warning system*
16 *as displaying bias indicators or other problematic behavior, the*
17 *law enforcement agency that employs the peace officer shall:*
18    (a) *Increase its supervision of the peace officer; and*
19    (b) *Provide additional training and, if appropriate, counseling*
20 *to the peace officer.*
21    3.  *If a peace officer is repeatedly identified by the early*
22 *warning system as displaying bias indicators or other problematic*
23 *behavior, the law enforcement agency that employs the peace*
24 *officer shall consider the consequences that should be imposed,*
25 *including, without limitation, whether the peace officer should be*
26 *transferred from any high-profile assignments or subject to any*
27 *discipline.*
28    4.  *The Peace Officers' Standards and Training Commission*
29 *may adopt any regulations necessary to carry out the provisions of*
30 *this section.*
31    **Sec. 2.**  NRS 289.550 is hereby amended to read as follows:
32    289.550  1.  Except as otherwise provided in subsection [2] *3*
33 and NRS 3.310, 4.353, 258.007 and 258.060, a person upon whom
34 some or all of the powers of a peace officer are conferred pursuant
35 to NRS 289.150 to 289.360, inclusive, must be certified by the
36 Commission within 1 year after the date on which the person
37 commences employment as a peace officer unless the Commission,
38 for good cause shown, grants in writing an extension of time, which
39 must not exceed 6 months, by which the person must become
40 certified. A person who fails to become certified within the required
41 time shall not exercise any of the powers of a peace officer after the
42 time for becoming certified has expired.
43    2.  *Before a person may be certified by the Commission*
44 *pursuant to this section, the person must have, at a minimum,*
45 *received an associate's degree, or completed not less than 2 years*




– 5 –

1    *of military service. A person does not need to satisfy such a*
2    *requirement before he or she participates in any training required*
3    *as a condition of certification as a peace officer.*
4       **3.**   The following persons are not required to be certified by the
5    Commission:
6       (a) The Chief Parole and Probation Officer;
7       (b) The Director of the Department of Corrections;
8       (c) The Director of the Department of Public Safety, the deputy
9    directors of the Department and the chiefs of the divisions of the
10   Department other than the Investigation Division and the Nevada
11   Highway Patrol;
12      (d) The Commissioner of Insurance and the chief deputy of the
13   Commissioner of Insurance;
14      (e) Railroad police officers; and
15      (f) California correctional officers.
16     **Sec. 3.**   Chapter 41 of NRS is hereby amended by adding
17   thereto a new section to read as follows:
18      *1.   Any peace officer who subjects another person or causes*
19   *another person to be subjected to the deprivation of any individual*
20   *constitutional rights that create binding obligations on*
21   *government actors is liable to the injured party for legal, equitable*
22   *or other relief.*
23      *2.   Notwithstanding any other provision of law, if an action*
24   *brought pursuant to this section seeks:*
25      *(a) Only equitable relief, qualified immunity is not a defense to*
26   *liability pursuant to this section.*
27      *(b) Monetary damages, qualified immunity is a defense only if,*
28   *at the time of the conduct of the peace officer, the peace officer*
29   *had a good faith belief that his or her conduct did not violate the*
30   *law.*
31      *3.   Notwithstanding any other provision of law and except as*
32   *otherwise provided in this subsection, the employer of a peace*
33   *officer shall indemnify the peace officer for any liability incurred*
34   *by the peace officer and for any judgment or settlement entered*
35   *against the peace officer for claims arising pursuant to this*
36   *section. If any act of the peace officer that resulted in such*
37   *liability, judgment or settlement was malicious, wanton or willful:*
38      *(a) The employer of the peace officer shall not indemnify the*
39   *peace officer; and*
40      *(b) The peace officer:*
41         *(1) Is personally liable for the costs associated with an*
42   *action brought pursuant to this section; and*
43         *(2) Shall reimburse his or her employer for any costs*
44   *associated with an action brought pursuant to this section that the*
45   *employer has already paid.*





– 6 –

1    *4.   If an employer of a peace officer is required to indemnify*
2    *the peace officer pursuant to subsection 3, the peace officer must*
3    *not be required to pay any costs associated with the liability,*
4    *judgment or settlement first and then subsequently be reimbursed*
5    *by the employer.*
6        **Sec. 4.**   NRS 41.0305 is hereby amended to read as follows:
7        41.0305   As used in NRS 41.0305 to 41.039, inclusive, **and**
8    **section 3 of this act,** the term "political subdivision" includes an
9    organization that was officially designated as a community action
10   agency pursuant to 42 U.S.C. § 2790 before that section was
11   repealed and is included in the definition of an "eligible entity"
12   pursuant to 42 U.S.C. § 9902, the Nevada Rural Housing Authority,
13   an airport authority created by special act of the Legislature, a
14   regional transportation commission and a fire protection district, an
15   irrigation district, a school district, the governing body of a charter
16   school, any other special district that performs a governmental
17   function, even though it does not exercise general governmental
18   powers, and the governing body of a university school for
19   profoundly gifted pupils.
20       **Sec. 5.**   NRS 239.010 is hereby amended to read as follows:
21       239.010   1.   Except as otherwise provided in this section and
22   NRS 1.4683, 1.4687, 1A.110, 3.2203, 41.071, 49.095, 49.293,
23   62D.420, 62D.440, 62E.516, 62E.620, 62H.025, 62H.030, 62H.170,
24   62H.220, 62H.320, 75A.100, 75A.150, 76.160, 78.152, 80.113,
25   81.850, 82.183, 86.246, 86.54615, 87.515, 87.5413, 87A.200,
26   87A.580, 87A.640, 88.3355, 88.5927, 88.6067, 88A.345, 88A.7345,
27   89.045, 89.251, 90.730, 91.160, 116.757, 116A.270, 116B.880,
28   118B.026, 119.260, 119.265, 119.267, 119.280, 119A.280,
29   119A.653, 119A.677, 119B.370, 119B.382, 120A.690, 125.130,
30   125B.140, 126.141, 126.161, 126.163, 126.730, 127.007, 127.057,
31   127.130, 127.140, 127.2817, 128.090, 130.312, 130.712, 136.050,
32   159.044, 159A.044, 172.075, 172.245, 176.01249, 176.015,
33   176.0625, 176.09129, 176.156, 176A.630, 178.39801, 178.4715,
34   178.5691, 179.495, 179A.070, 179A.165, 179D.160, 200.3771,
35   200.3772, 200.5095, 200.604, 202.3662, 205.4651, 209.392,
36   209.3923, 209.3925, 209.419, 209.429, 209.521, 211A.140,
37   213.010, 213.040, 213.095, 213.131, 217.105, 217.110, 217.464,
38   217.475, 218A.350, 218E.625, 218F.150, 218G.130, 218G.240,
39   218G.350, 226.300, 228.270, 228.450, 228.495, 228.570, 231.069,
40   231.1473, 233.190, 237.300, 239.0105, 239.0113, 239.014,
41   239B.030, 239B.040, 239B.050, 239C.140, 239C.210, 239C.230,
42   239C.250, 239C.270, 239C.420, 240.007, 241.020, 241.030,
43   241.039, 242.105, 244.264, 244.335, 247.540, 247.550, 247.560,
44   250.087, 250.130, 250.140, 250.150, 268.095, 268.0978, 268.490,
45   268.910, 269.174, 271A.105, 281.195, 281.805, 281A.350,





– 7 –

1  281A.680, 281A.685, 281A.750, 281A.755, 281A.780, 284.4068,
2  286.110, 286.118, 287.0438, 289.025, 289.080, 289.387, 289.830,
3  293.4855, 293.5002, 293.503, 293.504, 293.558, 293.5757, 293.870,
4  293.906, 293.908, 293.910, 293B.135, 293D.510, 331.110, 332.061,
5  332.351, 333.333, 333.335, 338.070, 338.1379, 338.1593, 338.1725,
6  338.1727, 348.420, 349.597, 349.775, 353.205, 353A.049,
7  353A.085, 353A.100, 353C.240, 360.240, 360.247, 360.255,
8  360.755, 361.044, 361.2242, 361.610, 365.138, 366.160, 368A.180,
9  370.257, 370.327, 372A.080, 378.290, 378.300, 379.0075, 379.008,
10  379.1495, 385A.830, 385B.100, 387.626, 387.631, 388.1455,
11  388.259, 388.501, 388.503, 388.513, 388.750, 388A.247, 388A.249,
12  391.033, 391.035, 391.0365, 391.120, 391.925, 392.029, 392.147,
13  392.264, 392.271, 392.315, 392.317, 392.325, 392.327, 392.335,
14  392.850, 393.045, 394.167, 394.16975, 394.1698, 394.447, 394.460,
15  394.465, 396.3295, 396.405, 396.525, 396.535, 396.9685,
16  398A.115, 408.3885, 408.3886, 408.3888, 408.5484, 412.153,
17  414.280, 416.070, 422.2749, 422.305, 422A.342, 422A.350,
18  425.400, 427A.1236, 427A.872, 432.028, 432.205, 432B.175,
19  432B.280, 432B.290, 432B.407, 432B.430, 432B.560, 432B.5902,
20  432C.140, 432C.150, 433.534, 433A.360, 437.145, 437.207,
21  439.4941, 439.840, 439.914, 439B.420, 439B.754, 439B.760,
22  440.170, 441A.195, 441A.220, 441A.230, 442.330, 442.395,
23  442.735, 442.774, 445A.665, 445B.570, 445B.7773, 447.345,
24  449.209, 449.245, 449.4315, 449A.112, 450.140, 450B.188,
25  453.164, 453.720, 453A.610, 453A.700, 458.055, 458.280, 459.050,
26  459.3866, 459.555, 459.7056, 459.846, 463.120, 463.15993,
27  463.240, 463.3403, 463.3407, 463.790, 467.1005, 480.535, 480.545,
28  480.935, 480.940, 481.063, 481.091, 481.093, 482.170, 482.5536,
29  483.340, 483.363, 483.575, 483.659, 483.800, 484A.469, 484E.070,
30  485.316, 501.344, 503.452, 522.040, 534A.031, 561.285, 571.160,
31  584.655, 587.877, 598.0964, 598.098, 598A.110, 599B.090,
32  603.070, 603A.210, 604A.303, 604A.710, 612.265, 616B.012,
33  616B.015, 616B.315, 616B.350, 618.341, 618.425, 622.238,
34  622.310, 623.131, 623A.137, 624.110, 624.265, 624.327, 625.425,
35  625A.185, 628.418, 628B.230, 628B.760, 629.047, 629.069,
36  630.133, 630.2673, 630.30665, 630.336, 630A.555, 631.368,
37  632.121, 632.125, 632.3415, 632.405, 633.283, 633.301, 633.4715,
38  633.524, 634.055, 634.214, 634A.185, 635.158, 636.107, 637.085,
39  637B.288, 638.087, 638.089, 639.2485, 639.570, 640.075,
40  640A.220, 640B.730, 640C.580, 640C.600, 640C.620, 640C.745,
41  640C.760, 640D.190, 640E.340, 641.090, 641.221, 641.325,
42  641A.191, 641A.262, 641A.289, 641B.170, 641B.282, 641B.460,
43  641C.760, 641C.800, 642.524, 643.189, 644A.870, 645.180,
44  645.625, 645A.050, 645A.082, 645B.060, 645B.092, 645C.220,
45  645C.225, 645D.130, 645D.135, 645G.510, 645H.320, 645H.330,




1   647.0945, 647.0947, 648.033, 648.197, 649.065, 649.067, 652.228,
2   653.900, 654.110, 656.105, 657A.510, 661.115, 665.130, 665.133,
3   669.275, 669.285, 669A.310, 671.170, 673.450, 673.480, 675.380,
4   676A.340, 676A.370, 677.243, 678A.470, 678C.710, 678C.800,
5   679B.122, 679B.124, 679B.152, 679B.159, 679B.190, 679B.285,
6   679B.690, 680A.270, 681A.440, 681B.260, 681B.410, 681B.540,
7   683A.0873, 685A.077, 686A.289, 686B.170, 686C.306, 687A.110,
8   687A.115, 687C.010, 688C.230, 688C.480, 688C.490, 689A.696,
9   692A.117,   692C.190,   692C.3507,   692C.3536,   692C.3538,
10   692C.354, 692C.420, 693A.480, 693A.615, 696B.550, 696C.120,
11   703.196, 704B.325, 706.1725, 706A.230, 710.159, 711.600, ***and***
12   ***section 17 of this act,*** sections 35, 38 and 41 of chapter 478,
13   Statutes of Nevada 2011 and section 2 of chapter 391, Statutes of
14   Nevada 2013 and unless otherwise declared by law to be
15   confidential, all public books and public records of a governmental
16   entity must be open at all times during office hours to inspection by
17   any person, and may be fully copied or an abstract or memorandum
18   may be prepared from those public books and public records. Any
19   such copies, abstracts or memoranda may be used to supply the
20   general public with copies, abstracts or memoranda of the records or
21   may be used in any other way to the advantage of the governmental
22   entity or of the general public. This section does not supersede or in
23   any manner affect the federal laws governing copyrights or enlarge,
24   diminish or affect in any other manner the rights of a person in any
25   written book or record which is copyrighted pursuant to federal law.
26     2.   A governmental entity may not reject a book or record
27   which is copyrighted solely because it is copyrighted.
28     3.   A governmental entity that has legal custody or control of a
29   public book or record shall not deny a request made pursuant to
30   subsection 1 to inspect or copy or receive a copy of a public book or
31   record on the basis that the requested public book or record contains
32   information that is confidential if the governmental entity can
33   redact, delete, conceal or separate, including, without limitation,
34   electronically, the confidential information from the information
35   included in the public book or record that is not otherwise
36   confidential.
37     4.   If requested, a governmental entity shall provide a copy of a
38   public record in an electronic format by means of an electronic
39   medium. Nothing in this subsection requires a governmental entity
40   to provide a copy of a public record in an electronic format or by
41   means of an electronic medium if:
42     (a) The public record:
43       (1) Was not created or prepared in an electronic format; and
44       (2) Is not available in an electronic format; or





– 9 –

1    (b) Providing the public record in an electronic format or by
2 means of an electronic medium would:
3    (1) Give access to proprietary software; or
4    (2) Require the production of information that is confidential
5 and that cannot be redacted, deleted, concealed or separated from
6 information that is not otherwise confidential.
7    5.   An officer, employee or agent of a governmental entity who
8 has legal custody or control of a public record:
9    (a) Shall not refuse to provide a copy of that public record in the
10 medium that is requested because the officer, employee or agent has
11 already prepared or would prefer to provide the copy in a different
12 medium.
13    (b) Except as otherwise provided in NRS 239.030, shall, upon
14 request, prepare the copy of the public record and shall not require
15 the person who has requested the copy to prepare the copy himself
16 or herself.
17    **Sec. 6.**   Chapter 484B of NRS is hereby amended by adding
18 thereto the provisions set forth as sections 7 to 21, inclusive, of this
19 act.
20    ***Sec. 7.***   *As used in sections 7 to 21, inclusive, of this act,*
21 *unless the context otherwise requires, the words and terms defined*
22 *in sections 8 to 16, inclusive, of this act have the meanings*
23 *ascribed to them in those sections.*
24    ***Sec. 8.***   *"Department" means the Department of Public*
25 *Safety.*
26    ***Sec. 9.***   *"Disability" means, with respect to a person:*
27    *1.   A physical or mental impairment that substantially limits*
28 *one or more of the major life activities of the person;*
29    *2.   A record of such an impairment; or*
30    *3.   Being regarded as having such an impairment.*
31    ***Sec. 10.***   *"Gender identity or expression" means a gender-*
32 *related identity, appearance, expression or behavior of a person,*
33 *regardless of the person's assigned sex at birth.*
34    ***Sec. 11.***   *"Law enforcement agency" has the meaning*
35 *ascribed to it in NRS 289.010.*
36    ***Sec. 12.***   *"Law enforcement officer" means any person upon*
37 *whom some or all of the powers of a peace officer are conferred*
38 *pursuant to NRS 289.150 to 289.360, inclusive.*
39    ***Sec. 13.***   *"Other stop" means any occasion when a person,*
40 *including, without limitation, a pedestrian, is halted by a law*
41 *enforcement officer for an alleged violation of law, or any other*
42 *purpose. The term does not include a traffic stop.*
43    ***Sec. 14.***   *"Profiling" means the targeting of a person by a law*
44 *enforcement agency or a law enforcement officer, on suspicion of*
45 *the person having violated a provision of law, based solely on the*





– 10 –

1   person's real or perceived age, race, ethnicity, color, national
2   origin, language, sex, gender identity or expression, sexual
3   orientation, political affiliation, religion, homelessness or
4   disability, unless the law enforcement agency or law enforcement
5   officer is acting on a suspect description or information related to
6   an identified or suspected violation of a provision of law.
7       Sec. 15.   "Sexual orientation" means having or being
8   perceived as having an orientation for heterosexuality,
9   homosexuality or bisexuality.
10      Sec. 16.   "Traffic stop" means any occasion when the driver
11  of a motor vehicle is halted by a law enforcement officer for an
12  alleged traffic violation or infraction, or any other purpose.
13      Sec. 17.   1.   Not later than January 1, 2022, the Department
14  shall develop and implement a standardized method to be used by
15  law enforcement officers to record information concerning traffic
16  stops and other stops. The standardized method must require, and
17  any form developed and used pursuant to the standardized method
18  must provide for, the following information to be recorded for
19  each stop:
20      (a)  The date and time of the stop;
21      (b)  The location of the stop;
22      (c)  The race, ethnicity, age and sex of the person stopped,
23  based on the observations of the law enforcement officer
24  responsible for reporting the stop;
25      (d)  The nature of, and the statutory citation for, the alleged
26  violation that caused the stop to be made; and
27      (e)  The disposition of the stop, including, without limitation,
28  whether:
29          (1)  A warning, citation or summons was issued;
30          (2)  A search was conducted and, if so:
31              (I)  The type of search conducted; and
32              (II)  Whether anything was found as a result of the
33  search; and
34          (3)  An arrest was made.
35      2.   Not later than January 1, 2022, the Department, in
36  consultation with law enforcement agencies, shall develop and
37  implement training and procedures to facilitate the collection of
38  information concerning traffic stops and other stops pursuant to
39  subsection 1.
40      3.   Beginning on January 1, 2022, each law enforcement
41  officer that makes a traffic stop or other stop shall record for each
42  stop the information set forth in paragraphs (a) to (e), inclusive, of
43  subsection 1, and each law enforcement agency shall retain such
44  information.





– 11 –

    4.   Each law enforcement agency that engages in traffic stops or other stops shall report to the Department the information recorded for the previous calendar year pursuant to subsection 3 not later than February 1, 2023, and at least annually thereafter.

    5.   Information acquired pursuant to this section must be used only for statistical purposes and not for any other purpose. The information must not contain any identifying information relating to a law enforcement officer who performed a traffic stop or other stop or a person who was stopped. Any information collected by law enforcement agencies or held by the Department pursuant to this section that could reveal the identity of any law enforcement officer who performed a traffic stop or other stop or any person who was stopped is confidential.

    Sec. 18.  1.   To the extent that money is available, the Department may contract with a third party to review all public information, including, without limitation, the prevalence and disposition of traffic stops and other stops, reported by law enforcement agencies pursuant to section 17 of this act and conduct a statistical analysis of the data for the purpose of identifying patterns or practices of profiling.

    2.   If a third party with whom the Department contracts pursuant to subsection 1 conducts a statistical analysis, the third party must, not later than December 31 of the year in which the statistical analysis is conducted, report the results of the analysis to the Governor, the Department, the Chair of the Senate Standing Committee on Judiciary and the Chair of the Assembly Standing Committee on Judiciary.

    3.   The Department shall seek any available gifts, grants or donations to assist in enabling the Department to contract with a third party pursuant to subsection 1.

    Sec. 19.  1.   The Department shall review any reports provided to the Department by the third party with whom the Department contracts pursuant to subsection 1 of section 18 of this act.

    2.   After reviewing a report, the Department may provide advice or technical assistance to any law enforcement agency mentioned in the report. Any advice or technical assistance provided must be based on best practices in policing as determined by the Peace Officers' Standards and Training Commission.

    3.   Upon providing advice or technical assistance to a law enforcement agency pursuant to subsection 2, the Department shall, within a reasonable period, present to the Peace Officers' Standards and Training Commission a summary of the advice or technical assistance given. The presentation must be open to the





– 12 –

1   *public, feature live testimony by presenters and be held in*
2   *accordance with chapter 241 of NRS.*
3        Sec. 20.   *The Department shall record information reported*
4   *to the Department pursuant to subsection 4 of section 17 of this*
5   *act in a central repository created by the Department to track data*
6   *electronically concerning traffic stops and other stops on a*
7   *statewide basis.*
8        Sec. 21.  *The Department may adopt any regulations*
9   *necessary to carry out the provisions of sections 7 to 21, inclusive,*
10  *of this act.*
11       Sec. 22.   1.   The Legislative Commission shall appoint a
12  committee to conduct an interim study relating to the establishment
13  of crisis response call centers.
14       2.    The interim committee must be composed of six Legislators
15  selected as follows:
16       (a) Two members of the Senate appointed by the Majority
17  Leader of the Senate;
18       (b) Two members of the Assembly appointed by the Speaker of
19  the Assembly;
20       (c) One member of the Senate appointed by the Minority Leader
21  of the Senate; and
22       (d) One member of the Assembly appointed by the Minority
23  Leader of the Assembly.
24       3.    The Legislative Commission shall appoint a Chair and Vice
25  Chair from among the members of the interim committee.
26       4.    The study must include, without limitation:
27       (a) An examination of the following proposals, including,
28  without limitation, the feasibility of such proposals and any effects
29  thereof:
30            (1) Pairing peace officers with mental health specialists,
31  social workers or counselors for any mental health calls that address
32  a non-violent situation;
33            (2) Having community service officers who are not armed
34  respond to non-emergency calls and whether that would require the
35  creation of a new department; and
36            (3) Expanding existing response teams across the State.
37       (b) A determination of which situations are considered to be
38  low-risk and which crimes are considered to be non-violent and how
39  best to provide information to the public as to when a person should
40  call an emergency number, a non-emergency number or another
41  help line.
42       (c) The consideration of alternative models for responses to
43  crises using resources that do not require armed law enforcement
44  officers, including, without limitation, responses to mental health
45  crises, issues relating to homelessness or other situations in which





– 13 –

1   responding with alternative resources is more appropriate than
2   responding with armed law enforcement officers.
3   (d) A determination of the feasibility of establishing a pilot
4   program relating to crisis response call centers.
5   5.  On or before September 1, 2022, the interim committee shall
6   submit a report of its findings, including, without limitation, any
7   recommendations for legislation, to the Governor and the Director
8   of the Legislative Counsel Bureau for transmittal to the 82nd
9   Session of the Nevada Legislature.
10  **Sec. 23.**   The provisions of NRS 354.599 do not apply to any
11  additional expenses of a local government that are related to the
12  provisions of this act.
13  **Sec. 24.**   The provisions of subsection 1 of NRS 218D.380 do
14  not apply to any provision of this act which adds or revises a
15  requirement to submit a report to the Legislature.
16  **Sec. 25.**   1.   This section and sections 17, 21 and 22 of this act
17  become effective upon passage and approval.
18  2.   Sections 6 to 16, inclusive, and 18 of this act become
19  effective:
20  (a) Upon passage and approval for the purpose of adopting
21  regulations and performing any other preparatory administrative
22  tasks necessary to carry out the provisions of sections 7 to 19,
23  inclusive, of this act; and
24  (b) On October 1, 2021, for all other purposes.
25  3.   Sections 1 to 5, inclusive, 23 and 24 of this act become
26  effective on October 1, 2021.
27  4.   Section 20 of this act becomes effective:
28  (a) On October 1, 2021, if the Department of Public Safety is
29  able to perform its duties under section 20 of this act using existing
30  resources; or
31  (b) On the date on which federal funding is obtained to carry out
32  the provisions of sections 7 to 21, inclusive, of this act if the
33  Department of Public Safety is not able to perform its duties under
34  section 20 of this act using existing resources.







# EXHIBIT B

**SB 286, As Enrolled (Leg. Sess. 2021)**

Senate Bill No. 236–Senators D. Harris; and Spearman

CHAPTER..........

AN ACT relating to public safety; requiring law enforcement agencies to establish early warning systems to identify peace officers who display bias indicators or other problematic behavior; establishing provisions relating to the recording, collection and review of information concerning traffic stops made by law enforcement officers; imposing certain duties on the Department of Public Safety and law enforcement agencies regarding the recording, collection and review of such information; authorizing the Department to adopt regulations relating to the recording, collection and review of such information; requiring the Legislative Commission to appoint a committee to conduct an interim study relating to the establishment of crisis response call centers; and providing other matters properly relating thereto.

**Legislative Counsel's Digest:**
Existing law sets forth provisions governing peace officers and establishes the Peace Officers' Standards and Training Commission (hereinafter "POST"), which generally provides for the training and education of peace officers. (Chapter 289 of NRS) **Section 1** of this bill requires every law enforcement agency to establish an early warning system for the purpose of identifying peace officers employed by the law enforcement agency who display bias indicators or other problematic behavior. **Section 1** requires that if a peace officer is identified by the early warning system as displaying bias indicators or other problematic behavior, the law enforcement agency that employs the peace officer is required to increase its supervision of the peace officer and provide additional training and, if appropriate, counseling to the peace officer. If a peace officer is repeatedly identified by the early warning system as displaying bias indicators or other problematic behavior, the law enforcement agency that employs the peace officer is required to consider the consequences that should be imposed, including transferring the peace officer from any high-profile assignments or subjecting the peace officer to any discipline.

Existing law establishes provisions relating to the rules of the roads in this State. (Chapter 484B of NRS) **Sections 7-21** of this bill establish provisions relating to the recording, collection and review of information concerning traffic stops made by law enforcement officers. **Section 17** of this bill requires the Department of Public Safety to develop and implement, not later than January 1, 2022: (1) a standardized method to be used by law enforcement officers to record certain information concerning traffic stops in an electronic traffic citation system, including certain demographic information of the person who was stopped; and (2) training and procedures to facilitate the collection of such information. **Section 17** also requires: (1) law enforcement officers that make a traffic stop for which a citation is issued through an electronic traffic citation system to record such information during the period beginning on January 1, 2022, and ending on December 31, 2025; and (2) law enforcement agencies that retain such information to report such information for the previous calendar year to the Department beginning not later than February 1, 2023, and at least annually thereafter until February 1, 2026. **Section 17** additionally requires that any such information be



used by the Department for statistical purposes only and provides that any identifying information of a law enforcement officer who performed a traffic stop or a person who was stopped that is collected or held by the Department is confidential.

**Section 17.5** of this bill requires the Department, not later than January 1, 2024, to: (1) develop and implement a standardized method to be used by law enforcement officers to record the information required to be recorded pursuant to **section 17** concerning traffic stops for which written citations or warnings are issued; (2) develop and implement training and procedures to facilitate the collection of such information; and (3) update written forms for traffic citations to accommodate the collection of such information. **Section 17.5** also requires: (1) law enforcement officers that make a traffic stop for which a written citation or warning is issued to record such information during the period beginning on January 1, 2024, and ending on December 31, 2025; and (2) law enforcement agencies that retain such information to report to the Department such information for the previous calendar year not later than February 1, 2025, for the 2024 calendar year and not later than February 1, 2026, for the 2025 calendar year. **Section 17.5** additionally requires that any such information be used by the Department for statistical purposes only and provides that any identifying information of a law enforcement officer who performed a traffic stop or a person who was stopped that is collected or held by the Department is confidential.

**Section 18** of this bill authorizes the Department, to the extent that money is available, to contract with a third party to review all public information reported by law enforcement agencies concerning traffic stops pursuant to **sections 17 and 17.5** and conduct a statistical analysis of the data to identify patterns or practices of profiling. **Section 18** requires the Department to seek any available gifts, grants or donations to assist in enabling the Department to contract with a third party to conduct such a statistical analysis. **Section 18** also requires such a third party with whom the Department contracts to submit, during the year in which a statistical analysis is conducted, a report of the results of the analysis to the Governor, the Department and the Chairs of the Senate and Assembly Standing Committees on Judiciary. **Section 19** of this bill authorizes the Department, after reviewing the report, to provide advice or technical assistance to any law enforcement agency mentioned in the report and, if such advice or technical assistance is provided, requires the Department to present to POST a summary of the advice or technical assistance given.

**Section 20** of this bill requires the Department to: (1) record information collected from law enforcement agencies concerning traffic stops that is not confidential in a central repository created by the Department to track data electronically concerning traffic stops on a statewide basis; and (2) make such data available to the public. However, **section 25** of this bill provides that, unless the Department is able to perform such duties using existing resources, such requirements only become effective on the date on which federal funding is obtained for the recording, collection and review of information concerning traffic stops made by law enforcement officers.

**Section 21** of this bill authorizes the Department to adopt any regulations necessary to carry out the provisions relating to the recording, collection and review of information concerning traffic stops made by law enforcement officers.

**Section 22** of this bill requires the Legislative Commission to appoint a committee to conduct an interim study relating to the establishment of crisis response call centers. **Section 22** requires that such a study include: (1) an examination of certain proposals relating to responses to non-violent and non-emergency situations; (2) a determination of how information should be provided to



– 3 –

the public regarding when to call an emergency number, a non-emergency number or another help line; (3) the consideration of alternative models regarding responses to crises that do not require armed law enforcement officers; and (4) a determination of the feasibility of establishing a pilot program relating to crisis response call centers. **Section 22** requires the interim committee to submit a report of its findings and any recommendations for legislation to the Governor and the Director of the Legislative Counsel Bureau for transmittal to the 82nd Session of the Nevada Legislature.

EXPLANATION – Matter in ***bolded Italics*** is new; matter between brackets [omitted material] is material to be omitted.

THE PEOPLE OF THE STATE OF NEVADA, REPRESENTED IN
SENATE AND ASSEMBLY, DO ENACT AS FOLLOWS:

**Section 1.**    Chapter 289 of NRS is hereby amended by adding thereto a new section to read as follows:

*1.   Each law enforcement agency shall establish an early warning system for the purpose of identifying peace officers employed by the law enforcement agency who:*

*(a)  Display bias indicators by, for example:*

*(1)  Having a large number of citizen complaints;*

*(2)  Being part of a large number of incidents involving the use of force;*

*(3)  Making a large number of arrests for resisting an officer;*

*(4)  Having a large number of the arrests that he or she has made result in no charges being filed because of issues such as improper searches or detentions; or*

*(5)  Having a negative attitude regarding programs that enhance relations between law enforcement and the community.*

*(b)  Display other problematic behavior by, for example:*

*(1)  Having a large number of motor vehicle crashes;*

*(2)  Abusing sick leave; or*

*(3)  Showing any other behavioral signs that are indicative of a decline in performance.*

*2.   If a peace officer is identified by the early warning system as displaying bias indicators or other problematic behavior, the law enforcement agency that employs the peace officer shall:*

*(a)  Increase its supervision of the peace officer; and*

*(b)  Provide additional training and, if appropriate, counseling to the peace officer.*

*3.   If a peace officer is repeatedly identified by the early warning system as displaying bias indicators or other problematic behavior, the law enforcement agency that employs the peace officer shall consider the consequences that should be imposed,*



81st Session (2021)

– 4 –

*including, without limitation, whether the peace officer should be transferred from any high-profile assignments or subject to any discipline.*

Secs. 2-4.   (Deleted by amendment.)

Sec. 5.   NRS 239.010 is hereby amended to read as follows:

239.010   1.   Except as otherwise provided in this section and NRS 1.4683, 1.4687, 1A.110, 3.2203, 41.071, 49.095, 49.293, 62D.420, 62D.440, 62E.516, 62E.620, 62H.025, 62H.030, 62H.170, 62H.220, 62H.320, 75A.100, 75A.150, 76.160, 78.152, 80.113, 81.850, 82.183, 86.246, 86.54615, 87.515, 87.5413, 87A.200, 87A.580, 87A.640, 88.3355, 88.5927, 88.6067, 88A.345, 88A.7345, 89.045, 89.251, 90.730, 91.160, 116.757, 116A.270, 116B.880, 118B.026, 119.260, 119.265, 119.267, 119.280, 119A.280, 119A.653, 119A.677, 119B.370, 119B.382, 120A.690, 125.130, 125B.140, 126.141, 126.161, 126.163, 126.730, 127.007, 127.057, 127.130, 127.140, 127.2817, 128.090, 130.312, 130.712, 136.050, 159.044, 159A.044, 172.075, 172.245, 176.01249, 176.015, 176.0625, 176.09129, 176.156, 176A.630, 178.39801, 178.4715, 178.5691, 179.495, 179A.070, 179A.165, 179D.160, 200.3771, 200.3772, 200.5095, 200.604, 202.3662, 205.4651, 209.392, 209.3923, 209.3925, 209.419, 209.429, 209.521, 211A.140, 213.010, 213.040, 213.095, 213.131, 217.105, 217.110, 217.464, 217.475, 218A.350, 218E.625, 218F.150, 218G.130, 218G.240, 218G.350, 226.300, 228.270, 228.450, 228.495, 228.570, 231.069, 231.1473, 233.190, 237.300, 239.0105, 239.0113, 239.014, 239B.030, 239B.040, 239B.050, 239C.140, 239C.210, 239C.230, 239C.250, 239C.270, 239C.420, 240.007, 241.020, 241.030, 241.039, 242.105, 244.264, 244.335, 247.540, 247.550, 247.560, 250.087, 250.130, 250.140, 250.150, 268.095, 268.0978, 268.490, 268.910, 269.174, 271A.105, 281.195, 281.805, 281A.350, 281A.680, 281A.685, 281A.750, 281A.755, 281A.780, 284.4068, 286.110, 286.118, 287.0438, 289.025, 289.080, 289.387, 289.830, 293.4855, 293.5002, 293.503, 293.504, 293.558, 293.5757, 293.870, 293.906, 293.908, 293.910, 293B.135, 293D.510, 331.110, 332.061, 332.351, 333.333, 333.335, 338.070, 338.1379, 338.1593, 338.1725, 338.1727, 348.420, 349.597, 349.775, 353.205, 353A.049, 353A.085, 353A.100, 353C.240, 360.240, 360.247, 360.255, 360.755, 361.044, 361.2242, 361.610, 365.138, 366.160, 368A.180, 370.257, 370.327, 372A.080, 378.290, 378.300, 379.0075, 379.008, 379.1495, 385A.830, 385B.100, 387.626, 387.631, 388.1455, 388.259, 388.501, 388.503, 388.513, 388.750, 388A.247, 388A.249, 391.033, 391.035, 391.0365, 391.120, 391.925, 392.029, 392.147, 392.264, 392.271, 392.315, 392.317, 392.325, 392.327, 392.335,



392.850, 393.045, 394.167, 394.16975, 394.1698, 394.447, 394.460, 394.465, 396.3295, 396.405, 396.525, 396.535, 396.9685, 398A.115, 408.3885, 408.3886, 408.3888, 408.5484, 412.153, 414.280, 416.070, 422.2749, 422.305, 422A.342, 422A.350, 425.400, 427A.1236, 427A.872, 432.028, 432.205, 432B.175, 432B.280, 432B.290, 432B.407, 432B.430, 432B.560, 432B.5902, 432C.140, 432C.150, 433.534, 433A.360, 437.145, 437.207, 439.4941, 439.840, 439.914, 439B.420, 439B.754, 439B.760, 440.170, 441A.195, 441A.220, 441A.230, 442.330, 442.395, 442.735, 442.774, 445A.665, 445A.570, 445B.7773, 447.345, 449.209, 449.245, 449.4315, 449A.112, 450.140, 450B.188, 453.164, 453.720, 453A.610, 453A.700, 458.055, 458.280, 459.050, 459.3866, 459.555, 459.7056, 459.846, 463.120, 463.15993, 463.240, 463.3403, 463.3407, 463.790, 467.1005, 480.535, 480.545, 480.935, 480.940, 481.063, 481.091, 481.093, 482.170, 482.5536, 483.340, 483.363, 483.575, 483.659, 483.800, 484A.469, 484E.070, 485.316, 501.344, 503.452, 522.040, 534A.031, 561.285, 571.160, 584.655, 587.877, 598.0964, 598.098, 598A.110, 599B.090, 603.070, 603A.210, 604A.303, 604A.710, 612.265, 616B.012, 616B.015, 616B.315, 616B.350, 618.341, 618.425, 622.238, 622.310, 623.131, 623A.137, 624.110, 624.265, 624.327, 625.425, 625A.185, 628.418, 628B.230, 628B.760, 629.047, 629.069, 630.133, 630.2673, 630.30665, 630.336, 630A.555, 631.368, 632.121, 632.125, 632.3415, 632.405, 633.283, 633.301, 633.4715, 633.524, 634.055, 634.214, 634A.185, 635.158, 636.107, 637.085, 637B.288, 638.087, 638.089, 639.2485, 639.570, 640.075, 640A.220, 640B.730, 640C.580, 640C.600, 640C.620, 640C.745, 640C.760, 640D.190, 640E.340, 641.090, 641.221, 641.325, 641A.191, 641A.262, 641A.289, 641B.170, 641B.282, 641B.460, 641C.760, 641C.800, 642.524, 643.189, 644A.870, 645.180, 645.625, 645A.050, 645A.082, 645B.060, 645B.092, 645C.220, 645C.225, 645D.130, 645D.135, 645G.510, 645H.320, 645H.330, 647.0945, 647.0947, 648.033, 648.197, 649.065, 649.067, 652.228, 653.900, 654.110, 656.105, 657A.510, 661.115, 665.130, 665.133, 669.275, 669.285, 669A.310, 671.170, 673.450, 673.480, 675.380, 676A.340, 676A.370, 677.243, 678A.470, 678C.710, 678C.800, 679B.122, 679B.124, 679B.152, 679B.159, 679B.190, 679B.285, 679B.690, 680A.270, 681A.440, 681B.260, 681B.410, 681B.540, 683A.0873, 685A.077, 686A.289, 686B.170, 686C.306, 687A.110, 687A.115, 687C.010, 688C.230, 688C.480, 688C.490, 689A.696, 692A.117, 692C.190, 692C.3507, 692C.3536, 692C.3538, 692C.354, 692C.420, 693A.480, 693A.615, 696B.550, 696C.120, 703.196, 704B.325, 706.1725, 706A.230, 710.159, 711.600, *and*



– 6 –

***sections 17 and 17.5 of this act,*** sections 35, 38 and 41 of chapter 478, Statutes of Nevada 2011 and section 2 of chapter 391, Statutes of Nevada 2013 and unless otherwise declared by law to be confidential, all public books and public records of a governmental entity must be open at all times during office hours to inspection by any person, and may be fully copied or an abstract or memorandum may be prepared from those public books and public records. Any such copies, abstracts or memoranda may be used to supply the general public with copies, abstracts or memoranda of the records or may be used in any other way to the advantage of the governmental entity or of the general public. This section does not supersede or in any manner affect the federal laws governing copyrights or enlarge, diminish or affect in any other manner the rights of a person in any written book or record which is copyrighted pursuant to federal law.

    2.   A governmental entity may not reject a book or record which is copyrighted solely because it is copyrighted.

    3.   A governmental entity that has legal custody or control of a public book or record shall not deny a request made pursuant to subsection 1 to inspect or copy or receive a copy of a public book or record on the basis that the requested public book or record contains information that is confidential if the governmental entity can redact, delete, conceal or separate, including, without limitation, electronically, the confidential information from the information included in the public book or record that is not otherwise confidential.

    4.   If requested, a governmental entity shall provide a copy of a public record in an electronic format by means of an electronic medium. Nothing in this subsection requires a governmental entity to provide a copy of a public record in an electronic format or by means of an electronic medium if:

(a) The public record:

    (1) Was not created or prepared in an electronic format; and

    (2) Is not available in an electronic format; or

(b) Providing the public record in an electronic format or by means of an electronic medium would:

    (1) Give access to proprietary software; or

    (2) Require the production of information that is confidential and that cannot be redacted, deleted, concealed or separated from information that is not otherwise confidential.

    5.   An officer, employee or agent of a governmental entity who has legal custody or control of a public record:

(a) Shall not refuse to provide a copy of that public record in the medium that is requested because the officer, employee or agent has



– 7 –

already prepared or would prefer to provide the copy in a different medium.

(b) Except as otherwise provided in NRS 239.030, shall, upon request, prepare the copy of the public record and shall not require the person who has requested the copy to prepare the copy himself or herself.

**Sec. 6.**   Chapter 484B of NRS is hereby amended by adding thereto the provisions set forth as sections 7 to 21, inclusive, of this act.

**Sec. 7.**   *As used in sections 7 to 21, inclusive, of this act, unless the context otherwise requires, the words and terms defined in sections 8 to 16, inclusive, of this act have the meanings ascribed to them in those sections.*

**Sec. 8.**   *"Department" means the Department of Public Safety.*

**Sec. 9.**   *"Disability" means, with respect to a person:*

*1.   A physical or mental impairment that substantially limits one or more of the major life activities of the person;*

*2.   A record of such an impairment; or*

*3.   Being regarded as having such an impairment.*

**Sec. 10.**   *"Gender identity or expression" means a gender-related identity, appearance, expression or behavior of a person, regardless of the person's assigned sex at birth.*

**Sec. 11.**   *"Law enforcement agency" has the meaning ascribed to it in NRS 289.010.*

**Sec. 12.**   *"Law enforcement officer" means any person upon whom some or all of the powers of a peace officer are conferred pursuant to NRS 289.150 to 289.360, inclusive.*

**Sec. 13.**   (Deleted by amendment.)

**Sec. 14.**   *"Profiling" means the targeting of a person by a law enforcement agency or a law enforcement officer, on suspicion of the person having violated a provision of law, based solely on the person's real or perceived age, race, ethnicity, color, national origin, language, sex, gender identity or expression, sexual orientation, political affiliation, religion, homelessness or disability, unless the law enforcement agency or law enforcement officer is acting on a suspect description or information related to an identified or suspected violation of a provision of law.*

**Sec. 15.**   *"Sexual orientation" means having or being perceived as having an orientation for heterosexuality, homosexuality or bisexuality.*



81st Session (2021)

– 8 –

Sec. 16.   *"Traffic stop" means any occasion when the driver of a motor vehicle is halted by a law enforcement officer for an alleged traffic violation or infraction.*

Sec. 17.   *1.   Not later than January 1, 2022, the Department shall develop and implement a standardized method to be used by law enforcement officers to record information concerning traffic stops in an electronic traffic citation system. The standardized method must require the electronic traffic citation system to provide for the following information to be recorded for each stop:*

*(a)  The date and time of the stop;*

*(b)  The location of the stop;*

*(c)  The race, ethnicity, age and sex of the person stopped, based on the observations of the law enforcement officer responsible for reporting the stop;*

*(d)  The nature of, and the statutory citation for, the alleged violation that caused the stop to be made; and*

*(e)  The disposition of the stop, including, without limitation, whether:*

*(1)  A warning, citation or summons was issued;*

*(2)  A search was conducted and, if so:*

*(I)  The type of search conducted; and*

*(II)  Whether anything was found as a result of the search; and*

*(3)  An arrest was made.*

*2.   Not later than January 1, 2022, the Department, in consultation with law enforcement agencies, shall develop and implement training and procedures to facilitate the collection of information concerning traffic stops for which citations are issued through an electronic traffic citation system pursuant to subsection 1.*

*3.   During the period beginning on January 1, 2022, and ending on December 31, 2025, each law enforcement officer that makes a traffic stop for which a citation is issued through an electronic traffic citation system shall record for each stop the information set forth in paragraphs (a) to (e), inclusive, of subsection 1, and each law enforcement agency shall retain such information.*

*4.   Each law enforcement agency that engages in traffic stops for which citations are issued through an electronic traffic citation system shall report to the Department the information recorded for the previous calendar year pursuant to subsection 3 not later than February 1, 2023, and at least annually thereafter until February 1, 2026.*



– 9 –

5.   *Information acquired pursuant to this section must be used by the Department only for statistical purposes and not for any other purpose. Any identifying information of a law enforcement officer who performed a traffic stop or a person who was stopped that is collected or held by the Department is confidential.*

Sec. 17.5.   *1.   Not later than January 1, 2024, the Department shall develop and implement a standardized method to be used by law enforcement officers to record information concerning traffic stops for which written citations or warnings are issued. The standardized method must require the information set forth in paragraphs (a) to (e), inclusive, of subsection 1 of section 17 of this act to be recorded for each stop.*

*2.   Not later than January 1, 2024, the Department, in consultation with law enforcement agencies, shall:*

*(a) Develop and implement training and procedures to facilitate the collection of information set forth in paragraphs (a) to (e), inclusive, of subsection 1 of section 17 of this act concerning traffic stops for which written citations or warnings are issued; and*

*(b) Update written forms for traffic citations to accommodate the collection of information set forth in paragraphs (a) to (e), inclusive, of subsection 1 of section 17 of this act.*

*3.   During the period beginning on January 1, 2024, and ending on December 31, 2025, each law enforcement officer that makes a traffic stop for which a written citation or warning is issued shall record for each stop the information set forth in paragraphs (a) to (e), inclusive, of subsection 1 of section 17 of this act, and each law enforcement agency shall retain such information.*

*4.   Each law enforcement agency that engages in traffic stops for which written citations or warnings are issued shall report to the Department the information recorded for the previous calendar year pursuant to subsection 3 not later than February 1, 2025, for the 2024 calendar year and not later than February 1, 2026, for the 2025 calendar year.*

*5.   Information acquired pursuant to this section must be used by the Department only for statistical purposes and not for any other purpose. Any identifying information of a law enforcement officer who performed a traffic stop or a person who was stopped that is collected or held by the Department is confidential.*

Sec. 18.   *1.   To the extent that money is available, the Department may contract with a third party to review all public information, including, without limitation, the prevalence and*



*disposition of traffic stops reported by law enforcement agencies pursuant to sections 17 and 17.5 of this act, and conduct a statistical analysis of the data for the purpose of identifying patterns or practices of profiling.*

*2.   If a third party with whom the Department contracts pursuant to subsection 1 conducts a statistical analysis, the third party must, not later than December 31 of the year in which the statistical analysis is conducted, report the results of the analysis to the Governor, the Department, the Chair of the Senate Standing Committee on Judiciary and the Chair of the Assembly Standing Committee on Judiciary.*

*3.   The Department shall seek any available gifts, grants or donations to assist in enabling the Department to contract with a third party pursuant to subsection 1.*

*Sec. 19.   1.   The Department shall review any reports provided to the Department by the third party with whom the Department contracts pursuant to subsection 1 of section 18 of this act.*

*2.   After reviewing a report, the Department may provide advice or technical assistance to any law enforcement agency mentioned in the report. Any advice or technical assistance provided must be based on best practices in policing as determined by the Peace Officers' Standards and Training Commission.*

*3.   Upon providing advice or technical assistance to a law enforcement agency pursuant to subsection 2, the Department shall, within a reasonable period, present to the Peace Officers' Standards and Training Commission a summary of the advice or technical assistance given. The presentation must be open to the public, feature live testimony by presenters and be held in accordance with chapter 241 of NRS.*

*Sec. 20.   The Department shall:*

*1.   Record information reported to the Department pursuant to subsection 4 of section 17 and subsection 4 of section 17.5 of this act, other than any identifying information of a law enforcement officer who performed a traffic stop or a person who was stopped that is confidential pursuant to subsection 5 of section 17 or subsection 5 of section 17.5 of this act, in a central repository created by the Department to track data electronically concerning traffic stops on a statewide basis; and*

*2.   Make such recorded data available to the public for the purpose of allowing the inspection of statistical information concerning traffic stops, including, without limitation, the race and ethnicity of the driver with regard to all traffic stops made on*



– 11 –

*all public roads other than those classified as local or minor rural roads.*

**Sec. 21.** *The Department may adopt any regulations necessary to carry out the provisions of sections 7 to 21, inclusive, of this act.*

**Sec. 22.** 1.   The Legislative Commission shall appoint a committee to conduct an interim study relating to the establishment of crisis response call centers.

2.   The interim committee must be composed of six Legislators selected as follows:

(a) Two members of the Senate appointed by the Majority Leader of the Senate;

(b) Two members of the Assembly appointed by the Speaker of the Assembly;

(c) One member of the Senate appointed by the Minority Leader of the Senate; and

(d) One member of the Assembly appointed by the Minority Leader of the Assembly.

3.   The Legislative Commission shall appoint a Chair and Vice Chair from among the members of the interim committee.

4.   The study must include, without limitation:

(a) An examination of the following proposals, including, without limitation, the feasibility of such proposals and any effects thereof:

(1) Pairing peace officers with mental health specialists, social workers or counselors for any mental health calls that address a non-violent situation;

(2) Having community service officers who are not armed respond to non-emergency calls and whether that would require the creation of a new department; and

(3) Expanding existing response teams across the State.

(b) A determination of which situations are considered to be low-risk and which crimes are considered to be non-violent and how best to provide information to the public as to when a person should call an emergency number, a non-emergency number or another help line.

(c) The consideration of alternative models for responses to crises using resources that do not require armed law enforcement officers, including, without limitation, responses to mental health crises, issues relating to homelessness or other situations in which responding with alternative resources is more appropriate than responding with armed law enforcement officers.



81st Session (2021)

– 12 –

(d) A determination of the feasibility of establishing a pilot program relating to crisis response call centers.

5.   On or before September 1, 2022, the interim committee shall submit a report of its findings, including, without limitation, any recommendations for legislation, to the Governor and the Director of the Legislative Counsel Bureau for transmittal to the 82nd Session of the Nevada Legislature.

**Sec. 23.**   The provisions of NRS 354.599 do not apply to any additional expenses of a local government that are related to the provisions of this act.

**Sec. 24.**   The provisions of subsection 1 of NRS 218D.380 do not apply to any provision of this act which adds or revises a requirement to submit a report to the Legislature.

**Sec. 25.**   1.   This section and sections 17, 17.5, 21 and 22 of this act become effective upon passage and approval.

2.   Sections 6 to 16, inclusive, 18 and 19 of this act become effective:

(a) Upon passage and approval for the purpose of adopting regulations and performing any other preparatory administrative tasks necessary to carry out the provisions of sections 7 to 19, inclusive, of this act; and

(b) On October 1, 2021, for all other purposes.

3.   Sections 1 to 5, inclusive, 23 and 24 of this act become effective on October 1, 2021.

4.   Section 20 of this act becomes effective:

(a) On October 1, 2021, if the Department of Public Safety is able to perform its duties under section 20 of this act using existing resources; or

(b) On the date on which federal funding is obtained to carry out the provisions of sections 7 to 21, inclusive, of this act if the Department of Public Safety is not able to perform its duties under section 20 of this act using existing resources.

20 ~~~~~ 21

