THE O'MARA LAW FIRM, P.C.
DAVID C. O'MARA
NEVADA BAR NO. 8599
311 East Liberty St.
Reno, Nevada 89501
775-323-1321
775-323-4082 (fax)
david@omaralaw.net

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| EAST CAREER AND TECHNICAL ACADEMY STUDENTS FOR LIFE, FELIPE AVILA, an individual, and JANELLE RIVERA, an individual, | )<br>)<br>) Case No. 2:22-cv-01647-RFB-BNW<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) **OPPOSITION TO MOTION TO DISMISS** |
| | ) |
| CLARK COUNTY SCHOOL DISTRICT; EAST CAREER AND TECHNICAL ACADEMY; DR. JESUS JARA, individually and in his capacity ad Superintendent of Clark County School District; TRISH TAYLOR, Individually and her capacity as Principal of East Career and Technical Academy; KAREN STELLUTO, individually and in her capacity as Assistant Principal of East Career and Technical Academy; and VINCENT MEDINA, Individually and in his capacity as Assistant Principal of East Career and Technical Academy, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

i

1        Now come Plaintiffs, East Career and Technical Academy ("ECTA") Students For Life

2   ("SFLC"), Felipe Avila ("Avila") and Janelle Rivera ("Rivera") (collectively, "Plaintiffs"), by and

3   through their counsel of record, David C. O'Mara, esq., of The O'Mara Law Firm, P.C., and

4   respond as follows to the Motion to Dismiss filed by Defendants, Clark County School District

5   ("CCSD"), Dr. Jesus Jara ("Dr. Jara"), Trish Taylor ("Taylor"), Vincent Medina ("Medina"), and

6   Karen Stelluto ("Stelluto") (collectively, "Defendants"). ECF No. 10.

7                            **I.        INTRODUCTION**

8        This case stems from the unlawful viewpoint discrimination to which Defendants subjected

9   Avila and Rivera, and the other members of the ECTA SFLC. Plaintiffs have alleged that

10  Defendants discriminated against the SFLC and its pro-life message in a plethora of ways. ECF

11  No. 1, paras. 16-23, 41, 42. ECTA staff have and continue to refuse to grant Plaintiffs equal access

12  to the ECTA public forum because of demonstrated antipathy to Plaintiffs' pro-life viewpoint.

13  Notably, this matter is before the Court because Defendants simply continue to refuse to commit

14  to complying with federal law. *Id.* at paras. 28, 34-37, Ex. A.

15       Defendants' Motion to Dismiss asserts six bases for partial dismissal of certain of

16  Plaintiff's claims. Defendants maintain: (1) ECTA, does not exist separate from Defendant CCSD

17  and so should be dismissed; (2) claims against the individual defendants in their official capacities

18  are duplicative of the claim against CCSD and so the claims against the individual defendants in

19  their official capacities, but not their individual capacities, should be dismissed; (3) Dr. Jara should

20  be dismissed because he had no involvement in the unlawful conduct; (4) Avila's claim for

21  prospective injunctive relief should be dismissed because it is mooted by his graduation; (5) the

22  Equal Access Act ("EAA") claims may only be asserted against a school, not individuals; and (6)

23  Plaintiffs have no legally defensible rights under the Nevada Constitution. Defendants' Motion to

24  Dismiss leaves Plaintiffs' principal allegations and claims unchallenged. Defendants concede that

25  Plaintiffs have stated claims against Defendants for discrimination against the content of Plaintiffs'

26  speech by failing to grant the SFLC and its members the same privileges afforded to similarly-

27  situated groups. As a result, the Motion to Dismiss does nothing to simplify this case, streamline

28  litigation, or clarify the issues. Rather, Defendants primarily dispute peripheral matters that, even

1    if Defendants were to prevail, leave Defendants to defend the discriminatory and illegal activities

2    at the core of Plaintiffs' claims.

3          To streamline matters and to hopefully move past procedural delay, Plaintiffs do not

4    dispute that the Court should grant the motion to dismiss ECTA as a party or Avila's claim for

5    prospective injunctive relief as moot. The remainder of the motion to dismiss should be denied;

6    Plaintiffs respectfully submit that the Court should: (1) deny Defendants' motion to dismiss the

7    individual defendants (Dr. Jara, Taylor, Stelluto and Medina) in their official capacities; (2) deny

8    the motion to dismiss Dr. Jara; (3) deny the motion to dismiss the EAA claims against the

9    individual defendants; and (4) deny the motion to dismiss Plaintiffs' claims under the Nevada

10    Constitution.

11                      **II.**      **STATEMENT OF FACTS**

12          "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

13    accepted as true, to state a claim to relief that is plausible on its face…When there are well-pleaded

14    factual allegations, a court should assume their veracity." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679

15    (2009) (internal citations omitted). Accordingly, the following factual allegations from the

16    Plaintiffs' complaint, which are particularly relevant to Defendants' Motion to Dismiss, must be

17    taken as true.

18                 **A.**      **The Parties.**

19          Avila founded SFLC at ECTA in September, 2019. The club was approved by ECTA in

20    October, 2019. Avila served as SFLC's President during the 2020-21 school year and, during the

21    2021-22 school year, as its Vice-President. Avila graduated from ECTA in May, 2022, but only

22    after being subjected to years of censorship, and other misconduct by Defendants because of

23    SFLC's and his pro-life viewpoint. ECF No. 1, para. 6.

24          Rivera served as President of SFLC during the 2021-2022 school year and has continued

25    her involvement with SFLC during the 2022-2023 school year. She has also been subjected to

26    years of censorship by Defendants because of SFLC's and her pro-life-viewpoint. *Id.* at para. 7.

27          CCSD is a school district, organized and existing under the Constitution and Laws of the

28    State of Nevada. CCSD administers over 300 schools in Clark County, Nevada, including ECTA.

1  CCSD has a prior history of violating the statutory and constitutional rights of students with a pro-

2  life viewpoint, including a matter that was subsequently dismissed, pursuant to stipulation, based

3  on a settlement reached by the parties. Under the settlement, CCSD agreed to approve the pro-life

4  club at West Technical and Career Academy, to treat the pro-life club the same as other non-

5  curriculum clubs, and to pay fees to the plaintiff's attorneys. *Id.* at para. 8.

6      Defendants govern and administer ECTA. ECTA is a public secondary school which

7  receives federal funds. Defendants' policies and rules governing clubs create a limited open forum.

8  ECTA has opened a limited open forum by allowing non-curriculum related student groups to meet

9  on school premises during non-instructional time and to engage in other activities as described

10  elsewhere in the Complaint. *Id.* at paras. 9, 51.

11      Dr. Jara is the Superintendent of CCSD. Dr. Jara was the Superintendent of CCSD

12  throughout the time of the misconduct alleged herein. *Id.* at para. 10. Taylor is the Principal of

13  ECTA. Taylor was the Principal of ECTA throughout the time of the misconduct alleged herein.

14  *Id.* at para. 11. Stelluto was an Assistant Principal at ECTA throughout the time of the misconduct

15  alleged herein occurred. *Id.* at para. 12. Medina was an Assistant Principal of ECTA throughout

16  the 2019-2020 and 2020-2021 school years. *Id.* at., para. 13. [1]

17                    **B.    Defendants' Discrimination Against SFLC, Avila and Rivera.**

18      During the 2019-2020 school year, Medina refused to allow SFLC to post flyers on the

19  basis that they "promoted" outside organizations. During the 2021-2022 school year, SFLC was

20  again denied permission to post flyers relating to the services available at a pregnancy resource

21  center on the basis that they promoted an outside organization. Defendants, however, permitted

22  other clubs and student organizations to reference outside organizations in their flyers. *Id.* at paras.

23  16-17.

24

25

26  ―――――――――――――――

27  [1] Defendants have represented to Plaintiffs' counsel that Stelluto and Medina are no longer
    employed by CCSD.
28

1         At the beginning of the 2021-2022 school year, Stelluto denied SFLC permission to post

2    flyers announcing the time, date and location of its first meeting of the year because it included a

3    picture of students holding signs with pro-life messages. In April, 2022, Stelluto also rejected a

4    SFLC flyer on the basis that "only the date and time of the club meeting" are permitted on club

5    flyers. Defendants, however, approved flyers for other clubs that promoted their messages using

6    words and images and which were not limited to the date and time of the club meeting. *Id.* at paras.

7    16-20.

8         During the 2019-2020 school year, SFLC was denied the right to publish pictures of its

9    flyers in the school newspaper, East Tech Times, although other clubs were allowed to do so.

10   During the 2021-2022 school year, SFLC again requested to include in the East Tech Times

11   pictures of flyers, but Taylor and Stelluto again refused to respond to the request, de facto denying

12   it. *Id.* at para 21.

13        CCSD's policies (Policy R-5132) state, in relevant part, "Noncurriculum-related student

14   groups and individual members of those student groups may distribute materials in conformance

15   with District Regulation 1110." *Id.* at para. 30. None of the [flyer or East Tech Times] materials

16   submitted by SFLC for Defendants' approval violated any of [District Regulation 1110's] criteria

17   and no one has claimed to Plaintiffs that they do. *Id.* at para. 33. CCSD's policies require the

18   principal to review materials submitted for distribution on a school wide basis, to respond within

19   three days of the request and, if the request is denied, to specify the reasons for the denial in writing.

20   (District Regulation 1110 II.A.3). SFLC did not receive from Taylor, Stelluto, or anyone else at

21   ECTA, a written statement denying distribution of materials submitted by SFLC for distribution

22   on a school wide basis or a statement of the reasons for denials. ECF No. 1, para 41-42.

23        During the 2021-22 school year, on February 7, 2022, Taylor hosted a summit for ECTA

24   club leaders, which included the leaders of all or most of ECTA's clubs. Taylor advised neither

25   Avila nor Rivera of the meeting. *Id.* at para. 23.

26        Avila was subject to bullying social media posts because of his pro-life views. He provided

27   copies of those bullying posts to Jara and Taylor, as well as information identifying the bullying

28

1   students, but Defendants took no action and instead inexplicably found the bullying

2   unsubstantiated. *Id.* at paras. 27-28.

3         On February 16, 2022, Jara and Taylor were informed by Plaintiffs' counsel that ECTA

4   was discriminating against SFLC by refusing to allow SFLC to distribute flyers, publish newspaper

5   announcements, or attend school club leader meetings. *Id.* at Ex. A.[2] They denied any

6   discrimination against SFLC, took no steps to remedy the discrimination, and the discrimination

7   continued thereafter. *Id.* at paras. 28, 34-42; Ex. B.

8                                       **ARGUMENT**

9       **A.**        **The Legal Standards Governing Consideration Of Defendants' Motion.**

10        Motions to dismiss for failure to state a claim under 12(b)(6)[3] are viewed with disfavor,

11  and, accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev.*

12  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). A court may not dismiss a complaint

13  "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims

14  which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When considering

15  whether sufficient facts have been pled, courts "also must consider all inferences favoring the non-

16  moving party that a trier of fact could reasonably draw from the evidence." *Ileto v. Glock Inc.*, 349

17  F.3d 1191, 1200 (9th Cir. 2003). "A complaint **should not be dismissed unless** a plaintiff could

18  prove no set of facts in support of his claim that would entitle him to relief." *Parks Sch. of Bus.,*

19

20  _____

21  [2] While "[g]enerally, a district court may not consider any material beyond the pleadings in ruling
22  on a Rule 12(b)(6) motion . . . material which is properly submitted as part of the complaint may
    be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th
23  Cir. 1990).

24  [3] Defendants erroneously exclusively rely on the *Nevada* Rules of Civil Procedure 12(b)(5), rather
    than the *Federal* Rules of Civil Procedure 12(b)(6) (*see* ECF 10 at 3-4.), despite this case being in
25  federal court under federal question jurisdiction. Nonetheless, the "Nevada Rules of Civil
    Procedure are based in large part upon their federal counterparts." *Las Vegas Novelty, Inc. v.*
26  *Fernandez*, 106 Nev. 113, 119 (1990), *accord First 100, LLC v. Burns,* No. A677693, n. 1 (8th
    Jud.Dist.Ct. May 31, 2013) ("rulings of federal courts interpreting and applying the federal rules
27  are persuasive authority for this Court in applying the Nevada Rules…NRCP 12(b)(5) is identical
    to FRCP 12(b)(6).").
28

*Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (emphasis added). Further, leave to amend should be granted "unless it is clear that the deficiencies of the complaint cannot be cured by amendment." *Reynolds v. Cardenas Markets, Inc.*, 2016 WL 107944, at *2 (D. Nev. Jan. 8, 2016).

**B.      CCSD accepts responsibility for defending the actions attributed to ECTA.**

Defendants maintain that ECTA should be dismissed because "ECTA is not an entity separate from CCSD, and has no individual capacity to sue or be sued…." ECF No. 10, Mot., p. 4. Plaintiffs do not object to the Court's dismissal of ECTA based on counsels' representation that CCSD accepts responsibility for defending the actions attributed to ECTA.

**C.      Individual defendants may be sued in their official capacities and should remain as defendants.**

Defendants argue that the "official capacity claims against the individual defendants are duplicative of the claims against CCSD." ECF No. 10 at 5. According to Defendants, because of this alleged duplication, the individual defendants, in their official capacities, "must" be dismissed. *Id.* None of the authorities cited by Defendants, however, stand for the proposition that there is a requirement that official capacity claims be dismissed if they are potentially duplicative. Other courts have allowed such claims to proceed, accepting that a plaintiff is "master of his own complaint." *See Maraglino v. Cty. of San Diego*, 2016 WL 11448146, at *4 (S.D. Cal. May 5, 2016) (rejected in part on other grounds by *Maraglino v. Cty. of San Diego*, 2016 WL 4536741 (S.D. Cal. Aug. 31, 2016)).

Numerous cases have recognized that individuals in both their official and individual capacities may be held liable for violations of the EAA. *See, e.g., Nielsen, next friend of S.N. v. Ann Arbor Pub. Sch.*, 2022 WL 16744371, at *5 (E.D. Mich. Nov. 7, 2022) (granting plaintiffs an emergency temporary restraining order "because the conduct of Defendants Ann Arbor Public Schools, [the school principal], individually and in his official capacity[, and the school secretary] violate…the federal Equal Access Act"); *E. D. v. Noblesville Sch. Dist.*, 2022 WL 4599119 , at *17 (S.D. Ind. Sept. 30, 2022) (denying a motion to dismiss a school superintendent and an assistant principal, in their individual and official capacities, from an EAA violation claim); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1098

6

1  n. 10 (9th Cir. 2022) (finding that student and school club plaintiffs were likely to prevail on their

2  EAA claim against a school district and school officials sued in both their individual and official

3  capacities); *Straights & Gays for Equal. v. Osseo Area Sch.-Dist. No. 279*, 540 F.3d 911 (8th Cir.

4  2008) (concluding that defendants, including a superintendent and principal sued in both individual

5  and official capacities, as well as the school district itself, violated the EAA).

6        Defendants fail to state any reason why it matters whether the individual defendants remain

7  in the litigation both in their individual and official capacities as opposed to just their individual

8  capacities, but presumably there is some purpose. Since Defendants point to no prejudice arising

9  to them from allowing Plaintiffs to maintain their official capacity claims, Plaintiffs respectfully

10  request that, in order to avoid any potential prejudice to Plaintiffs, the Court deny Defendants'

11  request.

12          **D.     There Is No Basis For Dismissing Dr. Jara.**

13        Defendants argue that Dr. Jara must be dismissed because there are no allegations that he

14  was involved in any unlawful conduct, and no possible inference from the allegations that he was.

15  ECF No. 10, p. 5. Defendants, however, acknowledge that Dr. Jara is a proper defendant if he

16  "participated in or directed the violations, or knew of the violations and failed to act to prevent

17  them." ECF No. 10, p. 5 (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

18        The Complaint alleges that Dr. Jara was informed of the bullying directed against Avila

19  because of his pro-life views but failed to act. ECF No. 1, paras 27-28, Ex. A. The allegations of

20  the Complaint further establish that Dr. Jara was informed on or about February 16, 2022, of the

21  viewpoint discrimination by ECTA against SFLC, in violation of the First Amendment and the

22  EAA. Dr. Jara knew ECTA staff had denied SFLC permission to distribute flyers, publish

23  newspaper announcements, or attend school club leader meetings. He also knew of the bullying

24  inflicted upon Avila. Despite being put on notice in February, 2022, Dr. Jara apparently did nothing

25  to ensure fair and equal treatment of SFLC, and the discrimination against SFLC continued *Id.* at

26  paras. ¶¶ 19-20. In fact, Dr. Jara failed to act to remedy that discrimination even after his counsel

27  was subsequently again advised on April 28, 2022, of ongoing and additional discrimination. *Id.*

28  at paras 16-24, 27-28, 36; Exs. A-C.

1      Accordingly, the Complaint alleges sufficient facts that, when coupled with "all inferences

2   favoring the [Plaintiffs] that a trier of fact could reasonably draw from the evidence," (*Ileto*, 349

3   F.3d at 1200), "plausibly suggest an entitlement of relief" and "raise a reasonable expectation that

4   discovery will reveal evidence" to support the allegations. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

5   Cir. 2011). Discovery can be reasonably expected to reveal additional evidence of Dr. Jara's acts

6   or omissions that led to the continued unlawful discrimination against SFLC, Avila, and Rivera,

7   including additional information regarding his failure to act to direct remediation rather than

8   litigation. The Court should deny the motion to dismiss Jara from the lawsuit.

9                     **E.      Individual defendants are liable for violations of the EAA.**

10      Defendants argue that the EAA does not restrain the conduct of individuals, but rather,

11   only the conduct of public secondary schools, and ask for dismissal of the individual defendants

12   as to that claim. ECF No. 10, Mot., pp. 6-7. Defendants are incorrect.

13      Defendants' novel reading of the EAA rests on nothing more than an analogy to a wholly

14   separate federal law. *See id.* at p. 6 (analyzing Title IX actions). Tellingly, Defendants do not

15   supply a single citation to a case concurring with their proposed reading of the EAA. Nor could

16   they. As previously noted, multiple courts across the country have held individuals liable, both in

17   individual and official capacities, for violations of the EAA. *See, e.g., Nielsen, next friend of S.N.*

18   *v. Ann Arbor Pub. Sch*., 2022 WL 16744371, at \*5 (E.D. Mich. Nov. 7, 2022) (granting plaintiffs

19   an emergency temporary restraining order "because the conduct of Defendants Ann Arbor Public

20   Schools, [the school principal], individually and in his official capacity[, and the school secretary]

21   violate…the federal Equal Access Act"); *E. D. v. Noblesville Sch. Dist*., 2022 WL 4599119 , at

22   \*17 (S.D. Ind. Sept. 30, 2022) (denying a motion to dismiss a school superintendent and an

23   assistant principal, in their individual and official capacities, from an EAA violation claim);

24   *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ*., 46 F.4th 1075, 1098

25   n. 10 (9th Cir. 2022) (finding that student and school club plaintiffs were likely to prevail on their

26   EAA claim against a school district and school officials sued in both their individual and official

27   capacities); *Straights & Gays for Equal. v. Osseo Area Sch.-Dist. No. 279*, 540 F.3d 911 (8th Cir.

28

2008) (concluding that defendants, including a superintendent and principal sued in both individual and official capacities, as well as the school district itself, violated the EAA).

Defendants invite this Court to adopt an unprecedented interpretation of the EAA which conflicts with numerous consistent cases, spanning decades, all of which recognize that individuals can be held liable for violations of the EAA. The Court should decline that insupportable invitation, and deny the motion to dismiss the EAA claim against individual defendants.

**F.      This Court has jurisdiction to resolve state constitutional claims.**

Defendants make the astonishing claim that, having adopted the Nevada Constitution to secure the rights of Nevada's citizens, the Nevada Constitution affords no mechanism for its enforcement. According to Defendants, there is no private action which allows citizens to seek redress in court after the State and its officers violate the rights ostensibly secured under their constitution. Defendants' theory relies on inapposite, piecemeal citations to various Nevada statutes and cases, each of which are plainly distinguishable from the present case.

For example, Defendants cite—and conspicuously do not quote—Article XV, § 16(B) as an exception allegedly proving the supposed rule that no implied private causes of action exist under the Nevada Constitution. Article XV (titled "Miscellaneous Provisions), § 16 (titled "Payment of minimum compensation to employees") sets a constitutional minimum wage for Nevada workers and requirements of employee health insurance plans in paragraph A, and permits employees to sue their employers in state court in paragraph B. That is, Article XV establishes a private cause of action against private actors. If anything, Article XV illustrates that the legislature may create a new cause of action for suits against non-state parties, but has no bearing on whether the legislature must explicitly create a new cause of action for suits against state actors.

Defendants also misleadingly assert that NRS 30.040 proves that explicit statutory authorization is required for a cause of action defending constitutionally-guaranteed rights to proceed. ECF No. 10, p. 8. NRS 30.040 (titled "Questions of construction or validity of instruments, contracts and statutes") offers an option to seek a "declaration of rights, status or other legal relations" arising under "instrument, statute, ordinance, contract or franchise." Nev. Rev. Stat. Ann. § 30.040. NRS 30.040 may perhaps illustrate that a statutory cause of action can be

9

explicitly authorized for questions of statutory construction. But Plaintiffs do not seek relief under a Nevada statute. Plaintiffs seek to secure the rights afforded by Article I, § 9 and § 10 of the Nevada Constitution.

Continuing, Defendants also misread NRS 34.185 as creating a proceeding for a constitutional claim. ECF No. 10, p. 9. Once again, Defendants fail to quote this statute, which merely provides rules for alleging a violation of Article I § 9, and in fact *presumes* that such an allegation can be resolved in state court: "If the applicant is alleging an unconstitutional prior restraint of the applicant's rights pursuant to… Section 9 of Article 1 of the Constitution of the State of Nevada, the applicant shall insert the words "First Amendment Petition" in the caption of the application for the writ in at least 10-point type." Nev. Rev. Stat. Ann. § 34.185.

Defendants' invocation of failed legislation establishing a new cause of action is unavailing. The Legislative Counsel's Digest explains that Section 3, cited by Defendants, "imposes liability on a peace officer" and "requires the employer of a peace officer to indemnify the peace officer for any liability" incurred under that section. *Id.* Senate Bill 236 presented a wide revision of Nevada law regarding police training and bias (Sections 1 and 2), police record standards and retention (Sections 7-21), and a non-emergency crises response call center (Section 22). ECF No. 10, Ex. A, p. 2. Given the wide reach of Senate Bill 236, the bill's failure to pass does not indicate a repudiation of a specific provision of the bill, but rather the bill as a whole. Defendants' citation to *McKay v. Bd. of Cry. Comm'rs*, 103 Nev. 490 (1987) does not support their position, because the court in *McKay* denied a claim that an exception lie dormant in final statutory text when the legislature explicitly rejected that same exception when it was proposed as a discrete amendment. *Id.* at 493, n. 2.

Moreover, Defendants ignore multiple Nevada Supreme Court cases repeatedly holding that plaintiffs may seek judicial relief when the state violates its own constitution, particularly those secured by Article I (titled "Declaration of Rights"). *See, e.g., Johanson v. Eighth Jud. Dist. Ct. of State of Nev. ex rel. Cnty. of Clark*, 124 Nev. 245 (2008) (finding in favor of a free speech claimant asserting a violation of Article 1 § 9 of the Nevada Constitution guaranteeing "liberty of

speech"); *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 415 (2001) (concluding that Article 1, § 9 is "coextensive to...that of the First Amendment to the United States Constitution").

Defendants also ignore that this Court has similarly found private rights of action within the Nevada Constitution. *See, e.g., Meeks v. Nevada*, 2011 WL 221774, at *3 (D. Nev. Jan. 20, 2011) ("Although there appears to be no case law directly addressing whether a private right of action lies under state law for a violation of the federal or state constitutions, there appears to be an implied cause of action for such violations…The Court therefore has supplemental jurisdiction to entertain the state constitutional claim as against all Defendants."); *Warren v. Nevada Dep't of Corr.*, 2019 WL 11788697, at *4 (D. Nev. Feb. 7, 2019) (finding in favor of free speech claimant under Article 1, § 9, and citing *S.O.C., Inc.* as holding that Article 1, § 9 "provides free speech protections that are coextensive with the First Amendment to the United Stated Constitution"); *Edwards v. Estill*, 2020 WL 6286233 (D. Nev. Oct. 26, 2020) (finding in favor of plaintiff asserting violations of Article 1, § 9 and Article 1, § 18 ("unreasonable seizure and search") of the Nevada Constitution).

The Nevada Constitution therefore does not "require legislation" to establish a cause of action in defense of rights, contrary to the Defendants' unfounded assertion. ECF No. 10, p. 8. This Court has resolved, and may continue to resolve, claims arising from state actors' violation of rights secured by the Declaration of Rights of the Nevada Constitution.

//

//

//

//

//

//

//

//

//

*[continued on following page]*

1

**III.    CONCLUSION**

2    Based on the foregoing, the Court should deny the motion to dismiss individuals in their

3 official capacities, the motion to dismiss Dr. Jara, the motion to dismiss EAA claims against the

4 individual defendants, and the motion to dismiss claims under the Nevada Constitution.

5 Alternatively, the Court should allow Plaintiffs to amend the Complaint to remedy any deficiencies

6 as identified by this Court.

7 DATED: January 6, 2023                          THE O'MARA LAW FIRM, P.C.

8

9                                                          /s/ David C. O'Mara
                                                    DAVID C. O'MARA, ESQ
10                                                 311 East Liberty St.
                                                   Reno, Nevada 89501
11                                                 775-323-1321
                                                   775-323-4082 (fax)
12

13                                                 Joan M. Mannix*
                                                   Thomas More Society - Special Counsel
14                                                 135 South LaSalle Street, Suite 2200
                                                   Chicago, IL 60602
15                                                 (312) 685-4552
                                                   jmannnix@joanmannixltd.com
16

17                                                 *pro hac vice application forthcoming

18                                                 *Counsel for Plaintiffs*

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of The O'Mara Law Firm, P.C., 311 E. Liberty Street, Reno, Nevada 89501, and on this date I served a true and correct copy of the foregoing document on all parties to this action by:

_____ Depositing in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, following ordinary business practices

_____ Personal Delivery

_____ Facsimile

_____ Federal Express or other overnight delivery

_____ Messenger Service

_____ Certified Mail with Return Receipt Requested

___X___ Electronically through the Court's ECF system

addressed as follows:

MARQUIS AURBACH
Craig R. Anderson, Esq.
Jackie V. Nichols, Esq.
10001 Park Run Drive
Las Vegas, Nevada 89145

*Attorneys for Defendants Clark County*
*School District, Dr. Jesus Jara, Trish Taylor,*
*Vincent Medina and Karen Stelluto*

DATED: January 6, 2023

_____/s/ Bryan Snyder_____
BRYAN SNYDER

13