**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Jackie V. Nichols, Esq.
Nevada Bar No. 14246
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
jnichols@maclaw.com
  Attorneys for Defendants Clark County School District, Dr. Jesus
  Jara, Trish Taylor, Karen Stelluto, and Vincent Medina

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| EAST CAREER AND TECHNICAL ACADEMY STUDENTS FOR LIFE, FELIPE AVILA, an individual, and JANELLE RIVERA, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CLARK COUNTY SCHOOL DISTRICT; EAST CAREER AND TECHNICAL ACADEMY; DR. JESUS JARA, individually and in his capacity ad Superintendent of Clark County School District; TRISH TAYLOR, Individually and her capacity as Principal of East Career and Technical Academy; KAREN STELLUTO, individually and in her capacity as Assistant Principal of East Career and Technical Academy; and VINCENT MEDINA, Individually and in his capacity as Assistant Principal of East Career and Technical Academy,<br><br>Defendants. | Case Number:<br>2:22-cv-01647-RFB-BNW<br><br>**CCSD DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL** |

Defendants Clark County School District ("CCSD"), Dr. Jesus Jara ("Dr. Jara"), Trish Taylor ("Taylor"), Vincent Medina ("Medina"), and Karen Stelluto ("Stelluto") (hereinafter collectively referred to "CCSD Defendants"), by and through their attorneys of record, the law firm of Marquis Aurbach, hereby submit their Reply in Support of Motion for Partial Dismissal.

. . .

This Reply is made and based upon all papers, pleadings, and records on file herein, the attached Memorandum of Points and Authorities, and any oral argument allowed at a hearing on this matter.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.    INTRODUCTION**

This Court must grant Defendants' Motion for Partial Dismissal.[1]  Several arguments are not contested.  First, Plaintiffs' Response concedes that East Career Technical Academy must be dismissed and that Plaintiff Avila has no basis for prospective relief.  Second, subsequent to the motion, the Nevada Supreme Court issued an opinion holding that the Nevada Constitution provides for a private right of action.  Accordingly, defendants acknowledge that plaintiffs' third claim may proceed.

Plaintiffs, however, contend that the official capacity claims should remain intact.  The authority relied upon by plaintiffs is distinguishable.  More importantly, however, plaintiffs offer no reason as to why their redundant claims **must** proceed.  Consistent with the overwhelming authority, this Court should dismiss the individuals in their official-capacities as they are duplicative of the claims against Clark County School District (CCSD).

Following the same logic, and case law, plaintiffs further contend that the individual defendants may be held liable for a violation of the Equal Access Act (EAA).  The cases cited by plaintiff, however, do not specifically address the liability of individual defendants for such claims. Moreover, the plain language of EAA makes clear that liability for failure to comply with the Act is with entity and not individuals. Therefore, this Court should make clear that only CCSD may be held liable under the EAA and not the defendants individually.

Finally, grasping at straws, plaintiffs attempt to concoct factual allegations to maintain claims against Dr. Jara in his individual capacity.  The Complaint makes clear that Dr. Jara did not have any involvement in the alleged conduct.  Relying on the facts asserted in the Complaint, the Court should dismiss Dr. Jara in his individual capacity.

---

[1] With the exception of Plaintiffs' Nevada Constitution claim.

MAC:01444-017 4950491_2 1/20/2023 8:37 AM

## II. LEGAL ARGUMENT

### A. PLAINTIFFS CONCEDE THAT EAST CAREER TECHNICAL ACADEMY IS NOT A PROPER DEFENDANT.

Plaintiffs do not dispute that East Career Technical Academy (ECTA) should be dismissed as CCSD is the proper defendant under Nevada Law. *See* NRS 386.010; *see also, Cottle v. Gillespie*, 2011 WL 2651685, at *1 (D. Nev. July 6, 2011) ("Washoe County District Attorney's Office was simply a department of the county and not a separate political subdivision subject to suit"); *Bauchman v. West Hiqh School*, 900 F. Supp. 254, 263-64 (D. Utah 1995) ("[i]ndividual schools are merely inseparable parts of the school districts"). Accordingly, ECTA must be dismissed from this action.

### B. PLAINTIFF AVILA CANNOT SEEK PROSPECTIVE RELIEF.

Plaintiff Avila offers no argument that he is able to seek prospective relief, essentially conceding that he is barred from doing so. *See* Local Rule 7-2(d) (failure of an opposing party to file points and authorities in response constitutes a consent to the granting of the motion). Thus, the Court must prohibit Plaintiff Avila from seeking prospective relief.

### C. THE NEVADA SUPREME COURT RECENTLY CONCLUDED THAT THE NEVADA CONSTITUTION PROVIDES FOR A PRIVATE RIGHT OF ACTION.

Subsequent to the filing of Defendants' Motion for Partial Dismissal, the Nevada Supreme Court issued an opinion in *Mack v. Williams*, 138 Nev. Adv. Op. 86 (Dec. 29, 2022), concluding that the Nevada Constitution does provide for a private right of action. Therefore, without admitting liability, defendants concede that plaintiffs may maintain this claim at this stage in the litigation.

### D. THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES MUST BE DISMISSED.[2]

Plaintiffs do not dispute that the claims against the individuals in their official capacities are duplicative of their claims against CCSD. Instead, Plaintiffs urge this Court to

---

[2] It appears that plaintiffs conflate defendants' arguments of dismissal of official capacity claims and dismissal of individual defendants as to plaintiffs' EAA claims. This section strictly addresses the official capacity claims.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

allow claims against CCSD and the individuals in their official capacities to proceed. While this Court maintains discretion in dismissing official capacity claims against individuals when an entity is named, Plaintiffs offer no basis to keep the individuals in their official capacities as part of the instant lawsuit. *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff's Dep't*, 533 F.3d 780, 799 (9th Cir. 1986). The claims asserted against the individual defendants in their official capacities are duplicative, redundant, meant to harass the defendants during discovery, and ultimately confusing to a jury. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (recognizing dismissal of official capacity claims as appropriate because claims were redundant and would cause confusion).

In an attempt to demonstrate that the official capacity claims should remain intact, Plaintiffs direct this Court to a number of cases that do not stand for the propositions as portrayed by the Plaintiffs. First, in *Nielsen, next friend of S.N. v. Ann Arbor Pub. Sch.*, No. 22-CV-12632, 2022 WL 16744371, at *5 (E.D. Mich. Nov. 7, 2022), the Michigan court never specifically addressed official capacity claims. Rather, the Court issued a temporary restraining order. *Id*. Thus, this case has no application to this issue of official capacity claims.

Plaintiffs next mischaracterized the application of official capacity claims in *E. D. v. Noblesville Sch. Dist.*, No. 121CV03075SEBMPB, 2022 WL 4599119, at *17 (S.D. Ind. Sept. 30, 2022). There, plaintiff brought claims against individual defendants in their official capacities and also named the entity as a party. *Id*. In its order regarding dismissal, the Court ruled:

> (4) Plaintiffs are hereby ORDERED TO SHOW CAUSE within 30 days from the date of this order as to **why their remaining official capacity § 1983 claims** against Defendants McCaffrey, Mobley, Luna, Pasko, Rootes, Schwingendorf-Haley, Kizer, Patterson-Jackson, Tuesca, and Eads **should not be dismissed as duplicative of their claims against the municipal entities**.

*Id*. (emphasis added). Thus, this case is consistent with defendants' position that the official capacity claims must be dismissed.

Plaintiffs third case is equally unpersuasive. In *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1098 (9th Cir. 2022), the Ninth Circuit reversed a district court's decision in denying plaintiffs' motion for a preliminary injunction.

MAC:01444-017 4950491_2 1/20/2023 8:37 AM

*Id.* The court reasoned, in part, that plaintiffs are likely to prevail on the merits of their selective enforcement clause under the First Amendment. *Id.* The decision never even addresses whether official capacity claims should be maintained when the entity is also named. *Id.* As such, this case is entirely irrelevant for the Court's analysis.

Finally, plaintiffs' reliance on *Straights & Gays for Equal. v. Osseo Area Sch.-Dist. No. 279*, 540 F.3d 911, 916 (8th Cir. 2008) is equally unavailing for the same reasons identified above. In that case, the Eighth Circuit affirmed a district court's decision granting partial summary judgment on plaintiffs' EAA claim. *Id.* Absent from the court's decision is any discussion on official capacity claims. *Id.* That is, the court was never faced with the argument of "official capacity" claims. Therefore, this case has no application to defendants' arguments.

Plaintiffs proffer no basis to depart from the well-established principle that official capacity claims should be dismissed when the entity is also named. Nor do plaintiffs explain how the cases cited in Defendants' Motion for Partial Dismissal are inapplicable to this matter. Accordingly, defendants request that the Court dismiss the claims against the individuals in their official capacities, as such claims are redundant of the claims against CCSD.

### E. PLAINTIFFS FAILED TO ESTABLISH THAT THE INDIVIDUAL DEFENDANTS CAN BE HELD LIABLE UNDER THE EQUAL ACCESS ACT.

Relying on the same mischaracterizations of the law, plaintiffs baldly assert that EAA claims can be maintained against individuals. But, like above, each case relied upon by plaintiffs is distinguishable.

First, in *Ann Arbor Pub. Sch.*, No. 22-CV-12632, 2022 WL 16744371, at *5, the district court did not specify which claims applied to which defendants:

> The Court's Order is issued because the conduct of Defendants Ann Arbor Public Schools, Cory McElmeel, individually and in his official capacity as Principal of Skyline High School, and Jefferson Bilsborrow, individually and in his capacity as secretary of Skyline High School, **violate Plaintiffs' First Amendment right to free speech, the Fourteenth Amendment's right to equal protection under law**, and the federal Equal Access Act, 20 U.S.C. §§ 4071-74.

*Id.* (emphasis added). Moreover, it does not appear from anywhere in the order for temporary restraining order that the court even addressed whether an EAA claim can be asserted against the individual defendants. Therefore, this case does not support plaintiffs' position.

The *Noblesville Sch. Dist.* court issued a ruling on a motion to dismiss. No. 121CV03075SEBMPB, 2022 WL 4599119, at *17. In addressing the EAA claims, the defendants contended that the complaint had failed to state a claim for relief because it showed that the revocation of a club's status was not based on religious, political, or philosophical content. *Id*. at *12. The court determined that plaintiff had plausibly alleged a claim under the EAA. *Id*. It does not appear from the decision that defendants contended the application of the EAA to individuals. *Id*. Thus, this case offers no support.

Along the same lines, the Ninth Circuit court did not even address EAA claims in its order reversing a denial of a preliminary injunction. *Fellowship of Christian Athletes,* 46 F.4th at 1098 (9th Cir. 2022). Instead, its ruling is strictly limited to a First Amendment analysis.

Finally, the Eighth Circuit's decision in *Straights & Gays for Equal.*, proves defendants' theory that claims are limited to the entity. 540 F.4th at 916. The entire decision references the entities and at no point in time mentions individuals' conduct or liability against the individuals under the EAA.

Plaintiffs attempt to flip the burden and assert that defendants failed to cite to any authority in support of their position. However, the burden is on plaintiffs to establish that their claim can be maintained as a matter of law. *Abramson v. Brownstein,* 897 F.2d 389, 391 (9th Cir. 1990) (dismissal is appropriate when a "plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (quoting *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir. 1986)). And, as demonstrated above, none of the authority relied upon by plaintiffs demonstrate that individuals are, in fact, proper defendants in EAA claims.

Just the opposite, the plain language of the EAA proves that it was Congress' intent that only the entity (i.e. the school district) be held liable for EAA violations. *See* 20 U.S.C. § 4071(a). Courts have applied the same logic in limiting Title IX claims to the entity. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 730 (6th Cir. 1996); *Smith v. Metropolitan School*

Page 6 of 12

*District Perry Township*, 128 F.3d 1014, 1020 (7th Cir. 1997).  Without any evidence to the contrary, this Court must follow the plain language of the EAA and dismiss the individual defendants from plaintiffs' claims.

**F.    DR. JARA MUST BE DISMISSED FROM THE LAWSUIT.**

To justify their suit against Dr. Jara, plaintiffs claim that their Complaint sets forth clear allegations of misconduct by Dr. Jara.  A cursory review of the Complaint, however, demonstrates no explicit allegations in relation to Dr. Jara.  *See* ECF No. 1, *generally*.  And, even the particular paragraphs referred to by plaintiffs make it clear that Dr. Jara did not have specific involvement:

> 16. For example, during the 2019-2020 school year, **Medina** refused to allow SFLC to post flyers on the basis that they "promoted" outside organizations because the flyers reflected information regarding the services provided by a pregnancy resource center and addressed adoption as an option for unexpected pregnancies, with the name and number of an adoption agency. During the 2021-2022 school year, SFLC was again denied permission to post flyers relating to the services available at a pregnancy resource center on the basis that they promoted an outside organization.
>
> 17. Defendants, however, permitted other clubs and student organizations to reference outside organizations in their flyers. For example, during the 2021-2022 school year, ECTA approved flyers that "promoted" outside organizations included a DECA flyer that promoted an outside women's shelter (Shade Tree). That poster stated, "The Shade Tree Organization provides safe shelter to homeless and abused women and children in crisis." A Robotics Club poster promoting a fundraiser at Popeye's included a blown up picture of a chicken sandwich and the words, "Support the Robotics Team and buy a Popeye's chicken sandwich."
>
> 18. At the beginning of the 2021-2022 school year, **Stelluto** denied SFLC permission to post flyers announcing the time, date and location of its first meeting of the year. SFLC was denied permission because the flyer included a picture depicting young people holding signs with pro-life messages. The stated reason for the denial was that the message printed on one of the signs ("I reject abortion") was "too controversial."
>
> 19. In April, 2022, for the first time, **Stelluto** also rejected a SFLC flyer on the basis that "only the date and time of the club meeting" are permitted on club flyers.
>
> 20. But Defendants approved flyers for other clubs that promoted their messages using words and images and which were not limited to the date and time of the club meeting. For example, the Black Student Union Club ("BSUC") was permitted to post a flyer stating in part, "Black Student Union is a safe space in which in students can discuss topics of race and other areas of social justice." In other flyers posted by the BSUC promoting its Black History Month Festival, that club was permitted to include a Malcom X quote,

"A man who stands for nothing, will fall for anything." In another BSUC flyer, BSUC was permitted to promote "Power To The People Day", and to encourage students, "Go Back To The Basics And Showcase Your Best Black And Brown Clothing." BSUC was also permitted to put up a poster stating, "For The Culture," with that text surrounded by pictures of famous people of color.

21. Defendants also discriminated against SFLC with respect to its ability to publish in the ECTA school newspaper. During the 2019-2020 school year, during the COVID19 pandemic, SFLC was denied the right to publish pictures of its flyers in the East Tech Times regarding health code violations and other issues found at Planned Parenthood. Because of the pandemic, the East Tech Times was the only means of outreach to other students available to the Club. The stated reason given for the refusal was that pictures of flyers were not permitted and that all that was permitted to be published in the East Tech Times were text only "blurbs." During the 2021-2022 school year, SFLC again requested to include in the East Tech Times pictures of flyers regarding health code and other issues found at Planned Parenthood clinics, but **Taylor** and **Stelluto** again refused to respond to the request, *de facto* denying it. Other clubs, including the Chess Club, Cheer Club, Choir Club, FCCLA and HOSA were permitted to include pictures of their clubs' flyers in the East Tech Times.

22. During the 2021-2022 school year, SFLC also requested permission to allow it to erect a banner in the "catwalk" area of the school cafeteria, as other student organizations have been permitted to do. The banner said, "Students for Life. The Future is Anti-Abortion". Text LIFE to 53445." Avila's request to post the banner was initially denied on the basis that the banner was "too professional" and had to be handmade. Later, CCSD's counsel asserted it was rejected because "student organizations are prohibited from hanging any banners in the school cafeteria unless they benefit all students." (Exhibit B). Subsequently, despite numerous requests, **Taylor** and **Stelluto** refused to return the banner to SFLC. although individual students and other student organizations have been permitted to do so.

23. In addition, to the many other forms of discrimination and censorship to which Defendants subjected Plaintiffs, on February 7, 2022, **Taylor** hosted a summit for ECTA club leaders, which included the leaders of all or most of ECTA's clubs. Avila learned of the meeting from the leader of another club. The meeting participants included the leader of the non-curricular Asian Student Union, who advised other members of the club she was attending a "school-wide meeting." Avila was advised by a person who attending the meeting that the leaders of the BSUC and Bible Club were also present at the meeting. Taylor advised neither Avila nor Rivera of the meeting, nor invited either of them, nor any member of the SFLC, to the meeting. CCSD's counsel claimed that only the leaders of ECTA-sponsored organizations were invited to the meeting, and that the meeting was not open to any ECTA student-sponsored organizations, but the Asian Student Union, the BSUC and the Bible Club (presumably) are not ECTA- sponsored clubs.

24. Further, according to CCSD's counsel, the result of the meeting was the creation of an interclub counsel that would meet monthly to discuss student issues and concerns, that would be open to "all – Clark County School District – and ECTA sponsored organizations and all other student organizations – including SFLC – will be invited to attend. The first meeting is scheduled to

MAC:01444-017 4950491_2 1/20/2023 8:37 AM

1
2
    occur later this month." SFLC did not receive an invitation to any such meeting.

3
    . . .

4
5
6
7
8
9
10
11
12
    27. Avila continued to be subject to bullying because of his pro-life views during the 2021-2022 school year, but Defendants again refused to act. On September 2, 2021, other students engaged in a barrage of Instagram posts directed to Avila that included rants against Avila's pro-life position peppered with threats and intimidation. That cyberbullying included the following comments among others: "first of all, cut your dick off if you are such a pro-lifer" - "i hope you rot in hell and get your dick cut off"; "my name is felipe and I'm gay"; "anyways you gay my guy the closet is open" - "@realfelipeavila where you at" -"he sucking on some penis rn"; we know your [sic] active felipe - "felipe why the fuck are you reporting my friend account" - "loser" - "your mom should have aborted you"; "can't take the heat" - "you thought this over" - "ha"; "he fs crying gagging and throwing up" - "LMAOO"; "You're are also a fucken [sic] boy stupid bitch wants to be oppressed so bad" - "Cut your dick off if you care so much"; "going to get my grind on today" - "i'm gonna get an abortion just for you felipe" - "felipe crying since I'm writing about abortion". Another "commenter" posted pictures of Mr. Avila and stated, "AYO on my mama fuck this nigga - Lame ass foo." . . .

13
14
    28. Avila, through his counsel, supplied copies of the actual posts to **Jara** and **Taylor**, as well as information identifying the bullying students, but Defendants took no action and instead found the bullying unsubstantiated. (See Exhibit A).

15
    . . .

16
17
18
19
    36. In response to CCSD's counsel's letter, SFLC resubmitted for approval a flyer similar to that previously rejected at the beginning of the school year for being "too controversial." The flyer indicated the time, date and location of the next upcoming SFLC meeting, as well as the fact that all were welcome. The flyer included the same picture students holding signs with pro-life messages. Neither **Taylor** nor **Stelluto** responded to numerous requests to approve that poster.

20 ECF No. 1 (emphasis added). The only allegation related to Dr. Jara specifically pertains to

21 a bullying allegation. This is nothing more than a red herring because none of the claims

22 asserted by Avila pertain to the alleged bullying. Indeed, the causes of action asserted by

23 plaintiffs pertain to equal access to forums and discrimination by denying them access to a

24 summit. ECF No. 1 at ¶¶ 48-66. Nevertheless, the Complaint itself demonstrates action was

25 taken as the bullying claims were "found [to be] unsubstantiated." *Id*. at ¶ 36. Plaintiffs'

26 exhibits do not provide any further support. It appears that plaintiffs are attempting to assert

27 liability against Dr. Jara because of its February 16, 2022 letter to him. ECF No. 1 at Exhibit

28

MAC:01444-017 4950491_2 1/20/2023 8:37 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711   FAX: (702) 382-5816

1  A.  Plaintiffs received a response to the letter from CCSD's office of General Counsel. *Id*. at Exhibit B.

Simply directing a letter to the Superintendent cannot suffice to demonstrate liability. Stated differently, plaintiffs failed to satisfy the pleading requirement to plausibly hold Dr. Jara liable. "While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations...a plaintiff is obligated to provide the 'grounds' of his 'entitle[ment] to relief' [under Rule 8(a)(2)] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do..." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting FRCP 8; first set of original brackets in original). The Court extended the pleading requirements articulated in Twombly, an anti-trust case, to all cases. *See Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). As a result, "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

To satisfy FRCP 8(a)(2), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 677-78. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* Ultimately, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than mere conclusions." *Id.* Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir. 1990).

Plaintiffs' Complaint falls short of plausible factual allegations to hold Dr. Jara liable in his individual capacity. Accordingly, this Court must dismiss Dr. Jara from the instant lawsuit entirely.

MAC:01444-017 4950491_2 1/20/2023 8:37 AM

## III. CONCLUSION

Based on the foregoing, CCSD Defendants respectfully request the Court grant their Motion for Partial Dismissal.

Dated this 20th day of January, 2023.

                                              MARQUIS AURBACH

By: /s/ Jackie V. Nichols
    Craig R. Anderson, Esq.
    Nevada Bar No. 6882
    Jackie V. Nichols, Esq.
    Nevada Bar No. 14246
    10001 Park Run Drive
    Las Vegas, Nevada 89145
    Attorneys for Defendants Clark County
    School District, Dr. Jesus Jara, Trish
    Taylor, Karen Stelluto, and Vincent Medina

MAC:01444-017 4950491_2 1/20/2023 8:37 AM

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **CCSD DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 20th day of January, 2023.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

N/A

/s/ Krista Busch
An employee of Marquis Aurbach

MAC:01444-017 4950491_2 1/20/2023 8:37 AM